JAMES W. DURBROW ET AL., PARTNERS, &c., v. SOPHIE EPPENS ET AL., EXECUTORS OF FREDERICK P. EPPENS, DECEASED.

Submitted March 26, 1900—Decided June 11, 1900.

1. The general rule of the common law is that the death of the principal puts an end to the agency, and no act of the agent subsequent thereto is binding on the estate of the principal. But there is a well-settled exception to this rule, which is that where the power is coupled with an interest in the subject-matter of the agency, the agent may execute the authority after the death of the principal.

2. Where the power of attorney forms part of a contract, and is security for money or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, and if not so, is deemed irrevocable in law, and the power may be exercised at any time, and is not affected by the death of the person who created it.

3. An association consisting of twenty underwriters was organized under the laws of New York, under the name of the "International Fire Lloyds." The defendant's testator was one of the members of this association. There was no joint stock, and the members

were liable on the policies issued as individuals; but nevertheless· the parties had a joint interest, which consisted in maintaining· the business of the company, which could not be prosecuted unless each member complied with the terms on which the association was founded. For that purpose the parties to the association united in selecting the plaintiffs as agents of each, each member· executing a deed or power of attorney to such agents. Each member was required to deposit a certain sum of money with the· advisory committee, to be held in trust to meet any losses. The deed of each member contained a covenant that if at any time the amount standing to the credit of a member should be or become· smaller than the amount of his deposit, it should be his duty immediately to make good such deficiency. The deed further· authorized and empowered the plaintiffs to adjust and pay losses· which should be incurred. The fund so provided, whether from· the deposits or from the moneys paid in, was a trust created for the benefit of the insured. The deed or power of attorney conferred on the plaintiffs as attorneys in fact the entire management and control of the business, subject to the revision of the advisory committee. In that respect the agency of the plaintiffs subsisted for the indemnity of the insured, and the powers conferred on the plaintiffs as agents to adjust and pay the amount of˙ such insurance was a power delegated to them for the benefit of those who held policies issued by the plaintiffs as the agents of the· deceased and of the other members of the association. The deed of each member also contained an express covenant that he would˙ carry out, execute and perform everything to which the plaintiffs· should by virtue thereof bind him, and would pay in any deficiency arising from the payment of losses over and above the· amount of his deposit.

4. The declaration averred the delivery of the deed to the plaintiffs; that in the lifetime of the deceased the plaintiffs had received: from him a large sum of money to be used and disposed of in accordance with the provisions in said deed or power of attorney specified, and did make and issue policies of insurance to divers· persons, did collect divers large sums of money as premiums and dividends of profits, did pay out and expend for the use of deceased large sums of money in adjusting, compounding, compro-- mising and settling claims and demands for loss and damage by fire on policies of insurance so made; that the deceased died on. the 11th of March, 1896, having $3,852.38 standing to his credit in the hands of the plaintiffs, and having a large number of policies made and underwritten with his name by said plaintiffs, by· virtue of the power and authority in said deed, still outstanding and remaining in full force and virtue. It further averred that the plaintiffs, in compliance with said deed or power of at· torney, and with the approval of the said advisory committee, and as required, directed and authorized by said advisory committee, did pay large sums of money in adjusting, compounding, compromising and settling claims and demands for losses by fire on the policies last aforesaid, said policies being issued during the

lifetime of the deceased, and for expenses incurred in the management of said business after his death, amounting to $4,876.30, and applying thereon the money standing to the credit of the deceased at the time of his death, leaving a balance of $1,023.92, for which this suit is brought. *Held,* that the power conferred upon the plaintiffs in the transaction of this business, so far as concerned the payment of losses to the insured, was a power coupled with an interest in the subject-matter of the agency, and was not revoked as to policies of insurance issued by the plaintiffs before the death of the deceased.

5. In an action against an executor the declaration need not contain the allegation that letters of administration were issued under the will of the deceased.

6. An averment in the declaration that the plaintiffs had presented their claim to the executor in compliance with the statute is unnecessary. If a rule to limit creditors were obtained, the failure of a creditor to present his claim accordingly is a matter of defence.

On demurrer to the declaration.

An association consisting of twenty underwriters became organized according to the laws of the State of New York under the name of "International Fire Lloyds." The plaintiffs were engaged in business as insurance brokers for fire insurance associations. Each of the underwriters forming such an association executed and delivered to the plaintiffs a deed or power of attorney. The instrument called a "deed or power of attorney" is twofold in its nature: a power of attorney, and also a contract, or, rather, a contract with a power of attorney annexed to it.

The organization of these associations consists in the members selecting an advisory committee for the purpose of facilitating the management and prosecution of the business provided for, and of protecting the interests both of those who should act as underwriters and those to whom policies of insurance might be issued in virtue of such powers of attorney. It provided that the advisory committee should have power to adopt regulations for the government of the plaintiffs in the business to be conducted by them under such powers of attorney, and in all respects to direct the plaintiffs in the management, custody and investment of all moneys and

other assets belonging to the member which should come into the hands of his attorney in fact in the course of the business therein provided for, and to supervise, regulate and control the acts and proceedings of the plaintiffs, his attorneys in fact. It also provided that the deed and power of attorney might be revoked by the member at any time upon ten days' notice to his attorneys in fact and to the advisory committee, and that the attorneys in fact, on receiving written notice of such revocation and within ten days thereafter, should cease to act as such attorneys in fact for him, except as to transactions already entered into on his behalf, and that his account should not be closed until thirty days after the expiration and liquidation of all risks in which he might have been concerned, and that any sum or sums to his credit should be irrevocably pledged to the payment of all losses for which he might be or become liable, whether on outstanding risks or otherwise, and on any amount which might be due or unpaid by him growing out of the business therein provided for. It was further provided that if at any time the amount standing to a member's credit should be or become smaller than the amount of his deposit, it should be his duty immediately to make good such deficiency, it being understood that all contributions made by him for such purpose should be refunded to him.

Considering the agreement as a "deed or power of attorney," it conferred on the plaintiffs, as attorneys in fact, the entire management and control of the business, subject to the revision of the advisory committee. It authorized the plaintiffs, as his attorneys in fact, to deduct from any sum of money in their hands, before payment thereof, as part of their compensation for business done by them thereunder, twenty-five per centum of all cash realized by them for him as net premium, and that the said attorneys should be entitled, at the close of each fiscal year's business, to a commission of ten per centum on the net profit that might be made for him in that year, such net profit to be computed on the basis of the gross premiums received, less all losses, attorneys' compensation, return premiums, and all other charges for expenses in

conducting the business, &c.; and did therein and thereby provide that if at any time the amount standing to his credit should be or become smaller than the amount of his deposit, namely, $1,000, it should be his duty immediately to make good such deficiency.

The deed declared that there should be no joint funds, capital or stock, but that the member thereby agreed upon the signing of the power of attorney to deposit with the advisory committee the sum of $1,000, and such sum and all sums thereafter passed to his credit should be held in trust to meet any loss. After reciting the acts to be done by the plaintiffs, as the agents of the deceased, comprehending every act that could in any wise be necessary in the conduct of the business of insurance, with full power and authority to do all and everything needful and proper in and about the premises, which the deceased himself could do personally, and ratifying all the plaintiffs might do or cause to be done in virtue thereof, the deceased, in consideration of the premises, did covenant and agree with the plaintiffs that he would in all things fully and faithfully carry out, execute and perform everything to which his said attorneys should by virtue thereof bind him.

The declaration avers the delivery of the deed to the plaintiffs, and that in the lifetime of the deceased the plaintiffs had received from him a large sum of money to be used and disposed of in accordance with the provisions in said deed or power of attorney specified, and did make and issue policies of insurance to divers persons, did collect divers large sums of money as premiums and dividends of profits, did pay out and expend for the use of deceased large sums of money in adjusting, compounding, compromising and settling claims and demands for loss and damage by fire on policies of insurance so made; that the deceased died on the 11th of March, 1896, having $3,852.38 standing to his credit in the hands of the plaintiffs, or of the advisory committee, and having a large number of policies made and underwritten with his name by said plaintiffs, by virtue of the power and authority in said deed so as aforesaid given and granted to them, still

outstanding and remaining in full force and virtue, which policies were underwritten by the plaintiffs at the same times, on the same terms and for equal amounts, with the names of all the underwriters for whom they then so acted as attorneys in fact, under deeds or powers of attorney similar to that executed by the deceased. It further avers that the plaintiffs, in compliance with the said deed or power of attorney, and with the approval of the said advisory committee, and as required, directed and authorized by said advisory committee, did pay large sums of money in adjusting, compounding, compromising and settling claims and demands for losses by fire on the policies last aforesaid (policies issued during the lifetime of Eppens), and for expenses incurred in the management of said business after his death, amounting to $4,876.30, and applying thereon the money standing to the credit of the deceased at the time of his death, leaving a balance of $1,023.92, for which this suit is brought.

The declaration contained the appropriate breaches assigned, &c.

Before DEPUE, CHIEF JUSTICE, and Justices VAN SYCKEL and GUMMERE.

For the plaintiffs, *William E. Skinner*.

For the defendants, *Brinkerhoff & Fielder*.

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This suit was brought by the plaintiffs against the executors of Frederick P. Eppens, deceased. The declaration sets out the "deed or power of attorney" in full. To this declaration the defendants demurred. The cause specified, which practically embraces all the specifications except the last, is that the death of the deceased put an end to the agency of the plaintiffs, and was an instantaneous and unqualified revocation of the authority of the plaintiffs. It must be borne in mind that all the policies adjusted which gave rise to the losses embraced in the

declaration were issued during the lifetime of the deceased. The power to issue policies had been exercised in the lifetime of the deceased.

It is an established rule of the common law that the death of the principal puts an end to the agency when the authority is not coupled with an interest, and no act of agency subsequent thereto is binding on the estate of the principal. But where the power is coupled with an interest in the subject-matter of the agency, the agent may execute the authority, as his rights survive the death of the principal. 1 *Am. & Eng. Encycl. L.* 1222; *Story Ag.,* §§ 488, 489. The leading case on this subject is *Hunt* v. *Rousmanier,* 8 *Wheat.* 174. It was there held that to constitute a power coupled with an interest there must be an interest in the thing itself, and not merely in the execution of the power. Where the power of attorney forms part of a contract, and is security for money or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, and, if not so, is deemed irrevocable in law. In the course of his opinion in that case Chief Justice Marshall said: "A power to A to sell for the benefit of B engrafted on an estate conveyed to A may be exercised at any time, and is not affected by the death of the person who created it. His power is coupled with an interest in the thing, which enables him to execute it in his own name, and is therefore not dependent on the life of the person who created it."

In *Gaussen* v. *Morton,* 10 *B. & C.* 731, A, being indebted to B and his partners, in order to discharge the debt, executed to B a power of attorney, authorizing him to sell certain lands belonging to him. It was held that this, being an authority coupled with an interest, could not be revoked. In *Walsh* v. *Whitcomb,* 2 *Esp. N. P.* 565, Lord Kenyon said: "There is a difference in cases of powers of attorney. In general they are revocable from their nature; but there are these exceptions: where a power of attorney is part of a security for money, there it is not revocable; where a power of attorney is made to levy a fine as a part of a security, it was held not to be revocable. The principle is applicable to

every case where a power of attorney is necessary to effectuate any security; such is not revocable." Where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, there, unless there is an express stipulation that it shall be revocable, it is, from its own nature and character, in contemplation of law irrevocable, whether it is expressed to be so upon the face of the instrument conferring the authority or not. Thus, for example, if a power of attorney to levy a fine is executed as a part of a security to a creditor, the power. is irrevocable. So, if a power of attorney to sell a ship is taken as a security upon a loan of money, it is irrevocable. So, if the principal assigns all his effects for the benefit of his creditors, and gives the assignee a power of attorney to collect and receive all debts and outstanding claims, the power is irrevocable. So, if a power of attorney to sell lands is given to a creditor to pay his debts out of the proceeds of the sale, the power is irrevocable. So a remittance to an agent of money or goods, to be delivered to a creditor in discharge of his debt, is irrevocable after the creditor has assented thereto and signified his assent to the agent. *Story Ag.,* § 477. In another part of his work on agency Mr. Justice Story adverts to the distinction between an authority which admits of severance, so as to be revoked as to the part which is unexecuted and good as to the part already executed, and says: "If the authority be not thus severable, and damage will thereby happen to the agent on account of the execution of the authority *pro tanto,* there the principal will not be allowed to revoke the unexecuted part, or, at least, not without fully indemnifying the agent. As to the rights of the other contracting party in this last case, they are not affected by the revocation; but he will retain them all, as well as all the remedies consequent upon any violation of them, in the same manner as if no revocation had taken place. *Id.,* § 466.

Under the organization adopted by those who became members of the company, as between themselves and the persons to whom policies were issued, the obligations of members were several. There was no joint stock, and the members

were liable on the policies issued as individuals; but, on an examination of the method on which the organization was effected, the parties had a joint interest. That interest consisted in maintaining the business of the company, which could not be prosecuted unless each member complied with the terms on which the association was founded. To accomplish that end the parties to the association united in selecting one person, or persons, as the agent of each, each member executing a deed or power of attorney to such agent. Each member was required to deposit a certain sum of money, and the deed of each member contained a covenant that if at any time the amount standing to the credit of such member should be less than the amount of the deposit he was required to make, it should be his duty immediately to make good such deficiency. The deed further authorized and empowered the plaintiffs to adjust and pay losses which should be incurred.

The policies issued by the association were joint in one sense, and several in another, each member being responsible to the insured only for the amount he contracted for—the money necessary to meet the demands of the insured being provided from the money deposited by the members severally or required to be paid in by each for that purpose. The fund so provided, whether from the deposits or from the moneys paid in, was a trust created for the benefit of the insured. In that respect the agency of the plaintiffs subsisted for the indemnity of the insured, and the power conferred on the plaintiffs, as agents, to adjust and pay the amount of such insurance was a power delegated to them for the benefit of those who held policies issued by the plaintiffs, as the agents of the deceased and of the other members of the association.

The form of the contract embraced in the policies issued by these associations was such as to give to each person insured an action against each one of the members to recover of him the amount ascertained to be his quota of the loss insured against; but that factor in this method of insurance does not supersede the other indemnity that those having policies possessed, viz., the deposit and the contract to make and keep that deposit good to answer all obligations incurred.

A Lloyds insurance originally was an insurance based upon a fund made up of deposits by each one of the members, from which, when a loss was adjusted, the agent took the means of payment. In this country, in adopting the Lloyds system of insurance, money representing the entire insurance was not deposited. In lieu of such a deposit the members each contributed a certain sum to make up a fund, and each contracted with agents, who were the representatives of the association, to pay in from time to time so much as should be needed to pay losses. Under the Lloyds system of insurance, after the loss was adjusted or ascertained by action against the agents, the insured received from the fund so provided the amount of loss. The fund deposited was, in the strictest sense, a trust fund for the benefit of persons holding policies. Under the Lloyds system, as adopted in this country, the trust in favor of the insured consists of the amount deposited by each member and the covenant on the part of each member to pay in money enough to answer the amount due from him upon such loss. The contract expressly provided that the money deposited and that paid in should be held in trust to pay losses.

The deed made by the deceased was twofold in its nature: a contract and a power of attorney—a contract that created an interest in those who became insured on the responsibility of individual members of the association, and a power of attorney, which included all such acts as were essential to the consummation of that contract. The power to adjust and pay comprised the adjustment and payment of the entire loss, for which all the members of the association were individually liable. Such a power must be exercised, necessarily, for all the members of the association. In making the adjustment and payment, the agents could not omit the share of loss which fell upon any one individual member. In this respect the insured, as well as the other members of the association, had an interest in the subject-matter of the agency and the powers conferred on the agents. The deed contained an express covenant that the deceased would carry out, execute and perform everything to which the plaintiffs should,

by virtue thereof, bind, him, and would pay in any deficiency arising from the payment of losses over and above the amount of his deposit. It is manifest that the power conferred upon the plaintiffs in the transaction of the business, so far as concerned the payment of losses to the insured, was a power coupled with an interest in the subject-matter of the agency, and hence was not revoked as to the policies of insurance issued by the plaintiffs before the death of the deceased.

The remaining specifications of causes of demurrer are: (1) That the declaration does not contain an allegation that letters of administration were issued under the will of the deceased. As a matter of pleading, such an allegation is unnecessary. A suit may be brought against executors *de son tort*. (2) That there is no averment in the declaration that the plaintiffs had presented any claim to the executors in compliance with the statute. Such an averment is unnecessary. The rule to limit creditors, if any rule was obtained, and the failure of a creditor to present his claim accordingly, are matters of defence.

The demurrer should be overruled.