JOHN McCLURE ESTATE, INC. *vs.* FIDELITY TRUST COMPANY & others.

CHADDOCK-CARNEY SALES COMPANY, INC. *vs.* LIBERTY TRUST COMPANY & another.

Suffolk.   November 20, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, & JENNEY, JJ.

*Trust Company*, In liquidation by commissioner of banks.   *Bills and Notes.*

A California corporation agreed to sell and to ship three carloads of goods to a Boston corporation, payment of the purchase price to be made by a draft of the seller upon the buyer with a bank guaranty. The buyer advanced funds to a trust company in Boston and directed it to pay the draft when presented. The trust company notified a California national bank which was acting for the seller that it would honor the draft. The goods were shipped, and the draft was forwarded to and was received by the trust company, which, on the date of

its receipt, executed its check on a national bank in New York payable to the California bank.  This check still was in the possession of the trust company when on the next day the commissioner of banks took possession of its property and business.  The buyer received and accepted the goods.  The seller was not paid.  Both the seller and the buyer filed with the commissioner a claim for the amount of the draft and both claims were disallowed.  Subsequently under a decree of court the commissioner sold the assets of the trust company to a second trust company, which assumed and agreed to pay all obligations and liabilities of the first trust company which had been or should be allowed.  Both the seller and the buyer brought suits in equity to establish their respective rights in which both trust companies and the commissioner of banks were defendants.  No defendant made any claim to the fund.  *Held,* that

(1) The absolute and unconditional promise of the first trust company to honor the seller's draft became binding upon it when the seller shipped the goods and forwarded the draft in reliance upon it;

(2) The buyer, having supplied the trust company with the funds to pay the draft and having accepted the goods, had no further legal or equitable claim upon those funds;

(3) A contention that the funds could not be claimed by the seller as a trust fund because they were mingled with the general funds of the first trust company was immaterial because the second trust company had waived it in taking the position of a mere stakeholder;

(4) The amount of the draft should be paid by the second trust company to the seller.

A second transaction between the same parties, set out in a suit with answers of the same character, related to two carloads of goods.  Previous to the commissioner taking possession, the buyer had sent its check for the purchase price to the trust company which had certified it and at the buyer's request had notified the seller's bank that it would honor a draft on the buyer, with bill of lading for the goods attached.  Receiving that notice, the seller shipped the goods.  The draft was lost in transmission.  The goods arrived after the commissioner had taken possession.  The buyer telegraphed the seller that the goods had arrived but that the papers were delayed and requested that authority be given to the carrier to deliver the goods without presentation of the bill of lading.  Authority accordingly was given and the goods were delivered to and accepted by the buyer.  *Held,* that

(1) The only material difference between the obligation of the trust company in this transaction and in the transaction above described was that, in this, the trust company's promise was to pay a draft with a bill of lading attached;

(2) The buyer had waived the requirement of a presentation of such draft and bill of lading by asking for delivery without presentation of the bill of lading and by accepting delivery;

(3) Neither trust company relied on such a defence;

(4) The amount of the second draft should be paid by the second trust company to the seller.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on September 20, 1921, against Fidelity Trust Company, the commissioner of banks, Liberty Trust Company and Chaddock-Carney Sales Company, Inc. seeking to establish

a claim of the plaintiff against Fidelity Trust Company in the amount of $8,153.73 and interest for money placed in its possession by Chaddock-Carney Sales Company, Inc. for payment to the plaintiff and not so paid, to enjoin Liberty Trust Company, successor to Fidelity Trust Company in the circumstances described in the opinion, from paying the amount of such claim to Chaddock-Carney Sales Company, Inc. and to require Liberty Trust Company to pay the amount of the claim, so established, to the plaintiff; also a

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 29, 1921, and afterwards amended, by Chaddock-Carney Sales Company, Inc. against Liberty Trust Company and the commissioner of banks, seeking to establish a claim of the plaintiff to the funds above described and to require payment thereof by Liberty Trust Company.

On motion by Liberty Trust Company and by order of *De Courcy,* J., the suits were consolidated. The parties then filed an agreed statement of facts. Material facts are described in the opinion. The suits were heard together by *Carroll,* J., who ordered a decree to be entered for the plaintiff John McClure Estate, Inc. and, at the request of Chaddock-Carney Sales Company, Inc. reported the suits upon the bills, the answers, the motion and decree of consolidation and the agreed statement of facts for determination by the full court.

*J. E. Crowley,* for the plaintiff, Chaddock-Carney Sales Company, Inc.

*F. S. Moulton,* for the plaintiff, John McClure Estate, Inc.

DE COURCY, J. Each of the plaintiffs seeks to establish a claim against the Fidelity Trust Company, arising out of transactions hereinafter set forth. The defendants Fidelity Trust Company, Liberty Trust Company, and Joseph C. Allen, commissioner of banks, make no claim to the money in question, amounting to $8,153.73; and admit that either the John McClure Estate, Inc. (hereinafter referred to as McClure Estate) or Chaddock-Carney Sales Company, Inc. (hereinafter referred to as Chaddock-Carney) is entitled to the same. The cases were consolidated and heard together; the single justice ordered a decree for McClure Estate; and at the request of the other plaintiff reported the case for determination by the full court.

The pertinent agreed facts are briefly as follows: In September, 1920, McClure Estate, a California corporation, agreed to sell and ship to Chaddock-Carney in Boston three carloads of grapes. Payment of the purchase price ($4,783.73) was to be made by draft, drawn by McClure Estate on Chaddock-Carney, and with a bank guaranty. On or about September 17, Chaddock-Carney advanced funds to the Fidelity Trust Company, and directed it to pay the draft when presented. Said trust company thereupon notified the First National Bank of Burbank, California, which was acting as agent for McClure Estate, that it would honor such draft for $4,783.73. The three carloads of grapes were accordingly shipped on or about September 18. A draft covering the same was duly forwarded to the Fidelity company; was received prior to September 27, 1920, and on that date the Fidelity drew its check upon the Chase National Bank of New York, payable to First National Bank of Burbank, in payment. This check was in possession of Fidelity Trust Company on September 28, 1920, when the bank commissioner took possession. The three carloads of grapes were delivered to Chaddock-Carney, and accepted by it. McClure Estate has never received payment for this or for the shipment next referred to.

The second transaction between these parties was for the sale of two carloads of grapes, the agreed price of which was $3,370. Chaddock-Carney, on September 21, 1920, sent its check for that amount to the Fidelity Trust Company; which certified the same, charged it to the account of Chaddock-Carney, and at the latter's request notified the First National Bank of Burbank that it would honor a draft on Chaddock-Carney for $3,370, with bill of lading attached, covering the two carloads. Upon receipt of this telegram, and pursuant to instructions, the grapes were shipped to Chaddock-Carney in Boston on or about September 21; and the draft for $3,370 was forwarded by First National Bank of Burbank to Fidelity Trust Company. This draft was lost in transmission. On October 4, Chaddock-Carney telegraphed McClure Estate that the cars had arrived, but that the papers were delayed; and requested McClure Estate to authorize delivery by the railroads without the presentation of bills of lading. This request was complied with, and the grapes were delivered to and accepted by Chaddock-Carney. On October 5, 1920, the Fidelity Trust Com-

pany received a duplicate draft for $3,370 from the First National Bank of Burbank, together with a statement that the original bills of lading and draft had been lost in transmission. This duplicate draft was returned to said First National Bank with the information that the bank commissioner had taken possession of the Fidelity Trust Company, and that it would not be paid. On October 19, McClure Estate telegraphed Chaddock-Carney demanding payment for the two carloads of grapes. The latter replied by wire on October 22, that its funds were deposited with the Fidelity Trust Company to meet the draft; and, in effect, that McClure Estate could look to that bank for payment.

The bank commissioner took possession of the Fidelity Trust Company on September 28, 1920. Both McClure Estate and Chaddock-Carney made proof of claim in accordance with G. L. c. 167, § 28, for $8,153.73; this being the total of the two drafts. Neither of said claims was allowed. The bank commissioner subsequently sold and transferred the assets of the Fidelity to the Liberty Trust Company, which sale was confirmed by the Supreme Judicial Court for Suffolk County by decree dated April 7, 1921. By the terms of the transfer the Liberty Trust Company assumed and agreed to pay all obligations and liabilities of the Fidelity Trust Company which had been or should be allowed.

So far at least as the first shipment is concerned, it is clear that McClure Estate has a direct cause of action against the Fidelity Trust Company for the amount of the draft, $4,783.73. The absolute and unconditional promise of the trust company to honor the draft of McClure Estate for that amount, whether construed as a guaranty or merely as an offer which would become binding when accepted and acted upon, bound said bank when the three carloads of grapes were shipped to Chaddock-Carney and the drafts were forwarded in reliance upon the credit extended by the bank to its depositor. *Stauffer* v. *Koch,* 225 Mass. 525. *Bishop* v. *Eaton,* 161 Mass. 496, 499. And the promise of the bank was made expressly to McClure Estate, not to a third person for its benefit. *New England Structural Co.* v. *James Russel Boiler Works Co.* 231 Mass. 274, 279. Chaddock-Carney having supplied the Fidelity with funds for the payment of the draft, and accepted the grapes which were sent in reliance upon such payment, has no legal or equitable claim to those funds. The contention that

McClure Estate cannot claim the money as a trust fund, because mingled with the general assets of the bank, *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, is not open to it. The Liberty Trust Company, successor to the Fidelity, which alone might raise this question, has assumed the position of a mere stakeholder; it admits that it owes the amount of both drafts, $8,153.73, and consents to pay the same to whichever of these parties is found by the court to be entitled to it.

As already appears, the obligation of the Fidelity Trust Company to pay the second draft, for $3,370, is based upon facts similar to those relating to the first one. The only material difference is that the Fidelity promised to pay this draft "with bill of lading attached;" — there being no reference to a bill of lading in the promise to honor the first draft. It is to be noted, however, that the Fidelity has never set up the failure to present a bill of lading as a defence to the payment. On the contrary, that bank, as well as its successor the Liberty Trust Company, has virtually interpleaded, waiving all right to make any defence other than that it should not be held liable to either or both of the claimants for a greater aggregate amount than said sum of $8,153.73. Nor can Chaddock-Carney insist on compliance with this condition. It waived the right to a bill of lading by requesting and obtaining delivery of the two carloads without that document, as above set forth; and thereafter, in its telegram of October 22, 1920, it practically instructed McClure Estate to look for payment to the funds which were deposited with Fidelity Trust Company for that purpose.

It may be added that the action brought in Los Angeles by McClure Estate against Chaddock-Carney and later dismissed upon plaintiff's motion, does not preclude it from maintaining its present suit. We are of opinion that the order by the single justice for a decree in favor of McClure Estate was warranted; and a decree is to be entered accordingly.

*So ordered.*