JOHN D. MULLONEY, administrator, *vs.* ALFRED S. BLACK.

Suffolk.   November 24, 1922. — March 6, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract,* What constitutes, Ratification, Construction, Termination. *Evidence,* Inference. *Power. Conversion. Agency,* Termination.

At the trial of an action of tort by an administrator to recover $720 alleged to have been converted by the defendant, it appeared from agreed facts that the plaintiff's intestate with several others including the defendant signed an agreement under seal dated September 25, 1918, in which they were named as parties of the first part and the manager of a moving picture corporation, who did not sign the agreement, was named as party of the second part; that the agreement was to continue for a period of ten years from its date unless sooner terminated by certain notices to be given by the parties to each other; that by the terms of the agreement the parties of the first part agreed that, after certain deductions, the party of the second part should have twenty-five per cent of the gross profits received by them and that the defendant as treasurer of the moving picture corporation should "deduct from the several amounts when paid them . . . by said corporation, the twenty-five per cent of said moneys, and that he be and hereby is authorized to pay the same to the party of the second part;" that by the terms of the agreement "parties of the first part" included and bound their successors, heirs and assigns, unless otherwise expressly stated. It further appeared that on January 19, 1919, the party of the second part made an assignment of all moneys due or to become due to him under the agreement and that the assignee notified the plaintiff's intestate to that effect; that the plaintiff's intestate died on or about March 1, 1919; that the plaintiff was appointed administrator and notified the defendant to make no payments of the intestate's share to the party of the second part, and that thereafter the defendant paid to the assignee of the interest of the party of the second part under the agreement $4,000 due him under the agreement, of which $720 was the share of the plaintiff's intestate. *Held,* that

(1) It was to be inferred that the party of the second part, by accepting payments and assigning his interest under the agreement, had recognized and ratified the agreement and became bound by its terms;

(2) The contract was indivisible and could not be terminated by one of the parties of the first part acting alone;

(3) The contract was not terminated by the death of the intestate and could not be terminated by his administrator except in the manner therein provided;

(4) The defendant had a property interest in the money in his hands with a power to dispose of it under the contract which was not revoked by the death of the plaintiff's intestate;

(5) The payment to the assignee being in accordance with an obligation resting on the defendant under the agreement, the plaintiff's intestate could not impair nor affect that obligation by notice to the defendant not to make the payment;

(6) The obligation of the defendant under the agreement not being terminated by the death of the intestate, the plaintiff could not recover.

TORT for conversion of $720. Writ dated September 23, 1920.

In the Superior Court the action was heard by *McLaughlin,* J., without a jury, upon a statement of agreed facts described in the opinion. The judge found for the plaintiff in the sum of $788.73; and the defendant appealed.

*C. S. Hill,* for the defendant.

*J. D. Mulloney, pro se.*

CROSBY, J. This is an action of tort for the alleged conversion of $720. The case was submitted to the trial judge upon an agreed statement of facts; there was a finding for the plaintiff.

An agreement under seal, dated September 25, 1918, in which the plaintiff's intestate (one O'Neill), the defendant, and others, are described as parties of the first part, recites that it is to bind them and their successors, heirs and assigns unless otherwise expressly stated. The party of the second part is described as Edward A. Golden, but he did not sign the agreement. After reciting that the parties of the first part were each entitled to receive from the "Hearts of the World Company of New England," a corporation, certain specified portions of the gross receipts of the company, and that Golden had taken over the management of the company and was at that time receiving from the corporation the sum of $150 a week, as salary, the contract further provides: "in consideration of services to be performed by the said party of the second part as manager in the exploitation of said picture for the Hearts of the World Company of New England, that out of the profits received by the said parties of the first part as hereinbefore set forth, after, however, they have first received the amounts of money advanced and to be advanced by them, amounting in all to not over eighty-one thousand dollars

and interest thereon, they hereby agree individually to pay to the party of the second part twenty-five per cent of the gross receipts in quarterly installments. . . ." The share of the gross receipts to be paid to Golden was to be diminished by deducting therefrom payments made to him by the corporation of his salary of $150 per week as general manager. The agreement by its terms was to run ten years, but Golden was entitled to terminate it by giving a certain notice; and the parties of the first part could also, by giving Golden notice, terminate it except that thereafter Golden was to be entitled to ten per cent of their share of the gross receipts. It also further provided as follows: "Now, it is further agreed by the said parties of the first part that the said Alfred S. Black, as treasurer of the Hearts of the World Company of New England shall deduct from the several amounts when paid them, as hereinbefore set forth, by said corporation, the twenty-five per cent of said moneys, and that he be and hereby is authorized to pay the same to the party of the second part."

On January 13, 1919, one Stoneman took an assignment of all moneys due or to become due to Golden under the agreement and notified the plaintiff's intestate, O'Neill, to that effect. At the time of the agreement O'Neill had a disputed claim against Golden for a sum in excess of $720, upon which suit had been brought and is now pending in court. O'Neill died on or about March 1, 1919, and the plaintiff was appointed and has qualified as administrator of his estate. Thereafter the plaintiff notified the defendant in writing not to make payments of O'Neill's share of profits to Golden; but subsequently the defendant did pay to Stoneman, as assignee of Golden, $4,000 coming to Golden under said agreement. Eighteen per cent of that payment, $720, was the share of O'Neill.

The question is, whether upon the facts above stated there is any evidence which warranted the finding of the trial judge in favor of the plaintiff. The payment to the defendant Black of gross receipts was as treasurer of the corporation, and it is a reasonable inference that thereafter, under the agreement, he held them individually as agent for the parties respectively entitled thereto; and when so held the obligation of the corporation to the parties respectively to pay the receipts to them was thereby discharged. The assignment to Stoneman was a partial assignment.

of a percentage of the entire gross receipts. Although Golden did not sign the contract nor expressly agree to be bound by its terms, it is to be inferred that he recognized and ratified it and became bound by its terms by accepting payments and assigning his interest thereunder to Stoneman. It follows that if the power given to Black under the agreement was revocable by the plaintiff's intestate, it could have been found that it was revoked before the payment to Stoneman; and if so found, that the plaintiff would be entitled to recover from the defendant eighteen per cent of the amount so paid.

The contract between the parties was joint and not several; it was binding upon each, respectively, and their successors, heirs and assigns, and was to continue for ten years unless sooner terminated upon notice, either by the parties of the first part or by Golden; none of the parties of the first part could terminate it without the consent of all. The intestate was only one of several individuals comprising the parties of the first part who bound themselves, their successors, heirs and assigns; he was only one of several to whom the defendant bound himself. The contract being indivisible, the death of the intestate could not terminate it as to the others or as to his own interest thereunder, nor could it be terminated during his lifetime except in the manner therein provided. In view of the conclusion reached, it is immaterial whether the $4,000 was received by Black before or after the death of O'Neill. The contract from its nature did not require services to be performed by O'Neill personally, and therefore was within the general rule that the legal representatives of a deceased person are bound to perform his contracts and are liable to action for the breach of them. *Harrison* v. *Conlan,* 10 Allen, 85. *Browne* v. *Fairhall,* 213 Mass. 290.

The payment by the defendant to Stoneman, the assignee of Golden, was in accordance with the terms of the agreement under which the defendant was required to pay Golden or his assignee the amount of his share of the gross receipts less the amounts paid him as weekly salary, and it was not so paid by virtue of a power conferred on him by O'Neill alone. The defendant had a property interest in the money in his hands with a power to dispose of it under the contract which was not revoked by the death of O'Neill. *Wheeler* v. *Slocumb,* 16 Pick. 52. *Middlesex Bank* v.

*Minot,* 4 Met. 325. *Hall* v. *Bliss,* 118 Mass. 554. *Hunt* v. *Rousmanier,* 8 Wheat. 174. *Merry* v. *Lynch,* 68 Maine, 94. Besides, the defendant was obligated to pay to Golden under the power which he had received from O'Neill, and the circumstance that he had entered into a contract to which Golden was a party in reliance upon the agency given him to enable him to carry it out was important. *Hess* v. *Rau,* 95 N. Y. 359. *Durbrow* v. *Eppens,* 36 Vroom, 10. See *John McClure Estate, Inc.* v. *Fidelity Trust Co.* 243 Mass. 408. If the defendant's interest as to himself were deemed to be a mere naked interest, still, considered in connection with the benefit which it was intended that Golden should derive from the exercise of the power, there is a power coupled with an interest created within the language of Chief Justice Marshall in *Hunt* v. *Rousmanier,* 8 Wheat. 174, at page 206: "We know that a power to A to sell for the benefit of B, engrafted on an estate conveyed to A, may be exercised at any time, and is not affected by the death of the person who created it. It is, then, a power coupled with an interest, although the person to whom it is given has no interest in its exercise. His power is coupled with an interest in the thing, which enables him to execute it in his own name, and is, therefore, not dependent on the life of the person who created it."

It was said by Lord Ellenborough in *Watson* v. *King,* 4 Camp. 272, that "A power coupled with an interest cannot be revoked by the person granting it; yet it is necessarily revoked by his death. How can a valid act be done in the name of a dead man?" But it is to be noticed that in *Watson* v. *King* there was no beneficial property interest in the agent and upon the facts of that case the decision reached is not in conflict with what was said in *Hunt* v. *Rousmanier, supra.* In *Alley* v. *Hotson,* reported in the same volume at page 325, the decision being written by the same judge, it was held that there being an actual property interest in the agent, the power was not revoked by the bankruptcy of the principal. *Kiddill* v. *Farnell,* 3 Sm. & G. 428. *Hatch* v. *Searles,* 2 Sm. & G. 147. *Carter* v. *White,* 25 Ch. D. 666.

It is well settled that a power coupled with an interest is not revoked by insolvency or bankruptcy. *Dickinson* v. *Central National Bank,* 129 Mass. 279. *Hutchinson* v. *Heyworth,* 9 Ad. & El. 375. *Hamilton* v. *Spottiswoode,* 4 Exch. 200. It is also held

that a power of sale contained in a mortgage of real estate is not revoked by the death of the mortgagor. *Varnum* v. *Meserve,* 8 Allen, 158. *Conners* v. *Holland,* 113 Mass. 50. *Hall* v. *Bliss, supra.* See also *Lincoln* v. *Emerson,* 108 Mass. 87. For a discussion of powers coupled with an interest, see Mechem on Agency, (2d ed.) pages 401 to 414, and pages 462 to 473.

As the payment to Stoneman was in accordance with an obligation which rested on the defendant under the agreement, the plaintiff's intestate could not impair nor affect that obligation by notice to the defendant not to make the payment; and as the obligation of the defendant under the agreement was not terminated by the death of the intestate, the plaintiff cannot recover.

The finding must be set aside and judgment entered for the defendant.

*So ordered.*