HANNAH F. HALE & others *vs.* HILLCREST REALTY CO. INC. & others.

Suffolk.     January 19, 1931. — June 23, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* Rescission, Accounting, To enjoin foreclosure of mortgage. *Equity Pleading and Practice,* Appeal, Cross claim. *Agency,* Termination of relation.

Where, in a suit in equity by several plaintiffs against several defendants for an accounting, a master finds nothing due to the plaintiffs from the defendants but a sum due to the defendants from the plaintiffs, and an interlocutory decree is entered, from which there is no appeal, overruling exceptions by the plaintiffs to the master's report and confirming the report; and later there are entered an interlocutory de-

cree adjudging a certain amount due one of the defendants from the plaintiffs, and a final decree ordering the payment of such sum, and the plaintiffs appeal from the last two decrees only, the sole question before this court on such appeals is whether the decrees appealed from are within the scope of the bill and can be supported upon the facts disclosed by the pleadings and the master's report.

In a bill in equity the plaintiffs, a man, his wife and one who had acted as a straw for him, averred in substance that the defendants, a corporation and two individuals, by false representations procured a purchase by the man from the corporation of certain real estate and the giving of a second mortgage thereon by the man and his wife, and sought to have the transactions set aside, a foreclosure of the second mortgage enjoined and an accounting. The defendants in their answer denied that there had been such false representations, averred that there was a balance due on the second mortgage and sought a decree adjudging such to be the fact. A master without a report of evidence found that there had been no false representation and that an accounting showed a balance due the defendants from the plaintiffs. After the report was confirmed, there were entered an interlocutory decree adjudging an amount due to the defendant corporation from the plaintiff man and his wife and a final decree which ordered the said plaintiffs to pay such sum. The plaintiffs appealed. *Held,* that

(1) The findings of the master must stand; and, the issue of false representation thus being removed, the bill stood merely for an accounting;

(2) It was proper to give the defendant corporation affirmative relief on the accounting.

By acceptance of the deed of the premises described in the above bill in equity, the grantee and his wife, mortgagors in the second mortgage, assumed and agreed to pay a large first mortgage. The second mortgage was to an officer of the defendant corporation and by its provisions the mortgagee was given "the right to collect all rentals up to the time of the payment of the within mortgage, but from said rentals shall pay all current bills as they become due and the balance of the collected rentals shall be applied toward the reduction of the mortgage amount." The mortgagee assigned the mortgage to the defendant corporation, and it assigned it to the two individual defendants. The holders of the mortgage collected the rents and from time to time made accountings to the plaintiffs, which were assented to by them as correct. The second mortgage became overdue, but by agreement of parties it was extended, the plaintiffs from time to time and to January of a year after the mortgage became due assenting to the holders of the mortgage paying from current receipts current expenses, including "interest on mortgage," and payments of interest on the first mortgage were made. The plaintiff straw assented to an accounting submitted in January which showed such a payment and gave further authority to the holders of the mortgage to collect rentals "and to make all necessary repairs, pay all taxes, coal bills, water bills, electric bills and all other bills that are neces-

sary to be paid for the aforesaid buildings." Taxes were overdue and were not paid and at no time was there money enough on hand to pay them. The first mortgage was to fall due in October. The plaintiffs and the individual defendants were all interested in securing an extension. Promptness in paying interest due on June 23 might effect such extension. On June 19 the plaintiff straw revoked the authority given the individual defendants in January. On June 20 they used funds in their hands to pay interest on the first mortgage which was to become due on June 23. The master who heard the suit stated in his report, "I do not find that the plaintiffs were injured in any way by the prepayment of interest by three days," and credited the defendants with the amount so paid. On an appeal by the plaintiffs from the decrees above described, it was *held*, that

(1) Although the authorization given in January did not expressly authorize payment of interest on the first mortgage, in the circumstances a finding was justified that such application was authorized;

(2) The power to collect and apply rents was coupled with an interest such that it could not be revoked summarily by the letter of June 19;

(3) It appearing that there was no time when the collected rents could meet the taxes and extinguish the mortgage, the plaintiffs were not entitled to relief under their bill.

The plaintiffs in the suit above described in their bill averred, and the defendants in their answer denied, that the plaintiffs husband and wife paid to the defendants the sum of $30,000 for the property which was the subject of the litigation. The master in his report found in substance that the plaintiff husband agreed to exchange for the property to be conveyed to him certain property at Whitman and a garage in South Boston upon a value of $5,000 for the Whitman property and $23,000 for the garage plus $2,000 in cash; that at the time of the deed to the plaintiff husband the Whitman property, which had been in the plaintiff wife's name, had been conveyed by her; that she had received back a purchase price mortgage which had been hypothecated by her, and which later was foreclosed by the pledgee; and that the South Boston garage property, in the name of the plaintiff wife, was subject to two mortgages, that there had been an entry to foreclose the second mortgage, and that later it was foreclosed; and that in adjustments made at the time of the conveyance to the plaintiff husband, the amount "Due Seller," including a "Purchase Price $9,500," was $10,564.39; and among the credits given the "Buyer" were cash, $2,000 and second mortgage, $3,940. There were no other findings in the report as to the Whitman or South Boston properties. Ten days·after the entry of an interlocutory decree confirming the master's report, from which there was no appeal, a further interlocutory decree was entered adjudging "that upon accounting between the parties, the plaintiffs," man and wife, "are indebted to the defendant" corporation in certain sums, which included a balance found by the master to be due on the second mortgage which was the subject matter of the suit, and "Allowance

in lieu of fee to Whitman farm $5,000." Only the plaintiffs, man and wife, appealed and contended before this court that there was no warrant for the item as to the Whitman property. *Held*, that

(1) It might well be that, on the hearing preceding the entry of the second interlocutory decree, further facts than those found by the master appeared which warranted the insertion of the item of $5,000, and directed payment to the defendant corporation only;

(2) No error was disclosed on the record.

BILL IN EQUITY, filed in the Superior Court on July 9, 1930, by Hannah F. Hale, Cornelius E. Hale and Mary E. Hale against Hillcrest Realty Co. Inc., Simon Hurwitz and Eli Goldberg to set aside a conveyance to the plaintiffs Cornelius E. and Mary E. Hale of property on Elizabeth Avenue in Boston and for an accounting.

The suit was referred to a master.

An allegation of the bill was: "That the complainants Cornelius E. Hale and Mary E. Hale, relying upon the representations made by the respondents, paid to the respondents the sum of $30,000 and took title to the" said property on Elizabeth Avenue. In their answers, the defendants denied such allegation.

Findings by the master relative to "property which was not conveyed as contracted for in payment for the original conveyance to Cornelius E. Hale," referred to in the last paragraph of the opinion, were as follows:

"Sometime prior to April 24, 1929, Mrs. [Mary E.] Hale had been the record title holder of a farm in Whitman, Mass., which farm she had sold to one Dretler and had taken back a purchase price mortgage of $9,500; this mortgage was later used as collateral for a loan of $4,500 from one Abraham Wyzansky. On April 24, 1929, she was not the owner of the fee of the farm at Whitman, Mass. and the mortgage was subject to the loan to Wyzansky.

"On April 24, 1929, Mary E. Hale was the owner of an equity in a garage in South Boston on which there was a first mortgage of $23,400 and a second mortgage of approximately $500. On April 17, 1929, the second mortgagee had entered in possession for the purpose of foreclosing the second mortgage on the South Boston garage.

"Such was the status of the two properties owned or claimed to be owned by the complainants and which are hereinafter referred to as having been a part of the considera-tion for the purchase of the Elizabeth Avenue property from the respondents. . . .

"As stated before neither Mary E. Hale nor Cornelius E. Hale owned the Whitman farm on April 24, 1929, and the South Boston garage was in the possession of the second mortgagee on that day. The Whitman farm mortgage was later foreclosed by Wyzansky and the second mortgagee foreclosed on the South Boston garage.

"The respondent Hillcrest Realty Company did receive the $2,000 in cash. . . .

"On April 23, 1929, Moore, [who acted for Hale] Hale and Hurwitz had a conference at Hurwitz' apartment, 301 Allston Street, and as a result of these negotiations it was agreed between the parties that Hale would exchange the property at Whitman and the garage at South Boston upon a basis of value set by Hale and accepted by Hurwitz of $5,000 for the equity in the Whitman farm and $23,000 as the value of the equity in the garage in South Boston plus $2,000 in cash for the equity in the Elizabeth Avenue property. . . . On April 24, 1929, the parties met . . . for the purpose of putting through the papers. . . . The parties figured the various adjustments as of April 1, 1929, it having been agreed that that date was the most convenient as taxes would then be eliminated. . . . This I find to be the adjust-ments made on April 24, 1929:

Due Buyer

| | |
|---|---:|
| 3 months, 8 days interest on mortgage | 2,620.08 |
| Taxes | 0.00 |
| Collected Rents for April | 1,735.00 |
| Water for 1st quarter and | |
|     1 month, 10 days to April 1, 1929 | 243.74 |
| Electric Bill to April | 23.79 |

$4,622.61

Due Seller

| | |
|---|---:|
| Purchase Price | $9,500.00 |
| Coal | 348.50 |
| Insurance | 675.89 |
| ½ to Janitor to April 15 | 40.00 |
| | $10,564.39 |

STATEMENT

| | | |
|---|---:|---:|
| Due Seller | 10,564.39 | |
| Due Buyer | 4,622.61 | |
| Balance due Seller | $5,941.78 | 5,941.78 |

Credits

| | | |
|---|---:|---:|
| Cash | 2,000.00 | |
| By 2nd mortgage | 3,940.00 | |
| Credit | 1.78 | 5,941.78" |

There were no other findings recited in the master's report or in the record on appeal respecting such properties, except the statement in the decree of October 16, 1930, hereafter set out.

Other material facts found by the master are stated in the opinion.

The docket entries disclose that on July 17, 1930, an injunction *pendente lite* enjoining foreclosure was issued. The reference to the master was on July 17. After the master gave notice of his draft report, a motion by the defendants that the injunction be dissolved was allowed.

On October 6, 1930, by order of *Dillon*, J., an interlocutory decree was entered overruling exceptions by the plaintiffs to the master's report and confirming the report.

On October 16, 1930, without any recital of a further hearing, there was entered by order of *Dillon*, J., an interlocutory decree adjudging

"That upon accounting between the parties, the plain-

tiffs, Cornelius E. Hale and Mary E. Hale, are indebted
to the defendant, Hillcrest Realty Co. Inc., in the follow-
ing sums, to wit, —

1. Balance due on second mortgage 11-13
   Elizabeth Avenue, Boston                    $1,417.93
2. Costs and expense of foreclosure proceed-
   ings under second mortgage                    103.40
3. Interest on items 1 and 2 from June 23/30
   to date of final decree to be entered here-
   with                                           26.61
4. Allowance in lieu of fee to Whitman farm   5,000.00
                                              _____
5. Total                                      $6,547.94"

On the same day, there was entered a final decree direct-
ing Cornelius E. and Mary E. Hale to pay to the de-
fendant, Hillcrest Realty Co. Inc., forthwith the sum of
$6,547.94; that "the bill be dismissed as to other defend-
ants," and awarding costs to the defendants.

The plaintiffs appealed from the final decree and from
the interlocutory decree of October 16, 1930.

In their brief before this court the plaintiffs, among
other contentions, argued that the "second mortgage was
paid off and should have been discharged"; that the
"fourth item, 'Allowance in lieu of fee to Whitman farm,
$5,000,' is erroneous for different reasons. In the first
place, the defendants' answer does not set up any right to
an accounting for the value of any fee in the Whitman
farm. The answer says that 'no accounting should be
ordered against it as prayed for but that if such account-
ing be ordered, then the defendants say that a substantial
net balance remains due from the plaintiffs.' The allega-
tions in the bill were for an accounting of the dealings of
the second mortgagee. If any claims about the purchase
price were in the minds of the defendants, they should
have been clearly set forth in the answer. In the second
place, there is nothing in the record which shows one way
or the other whether this fee in the Whitman farm was or

was not conveyed to the Hillcrest Realty Company. The master found that on April 24, Mary Hale was not the owner of the fee but was the owner of the purchase price mortgage in the sum of $9,500. A deed from the present owner and the extinguishment of this mortgage would be quite as good as a deed from Mary Hale and the mere fact that she was not the owner did not prevent her from delivering a deed and no such inference can be drawn from the findings in this case. Finally, it appears beyond any question of doubt that when the deed was delivered and the second mortgage was executed, the parties made adjustments, reducing their adjustments to writing . . . and under the heading 'Due Seller' is the 'Purchase Price, $9,500' and the purchase price was paid by the complainants by the balancing of the adjustments showing a balance in favor of the seller, the respondents, of $5,941.78, which balance was paid by the complainants, $2,000 in cash and $3,940 by a second mortgage and $1.78 by a credit to make the amounts even decimals. This second mortgage can be figured on no other basis than the basis set forth in these adjustments. To charge the complainants with the payment of $5,000, when the purchase has already been paid, is erroneous.''

*J. B. O'Hare* for the plaintiffs, submitted a brief.

*M. Witte,* for the defendants.

WAIT, J.   The plaintiffs appeal from interlocutory and final decrees entered on October 16, 1930, by which it was adjudged that upon an accounting, the plaintiffs Cornelius E. Hale and Mary E. Hale were indebted to the defendant Hillcrest Realty Co. Inc. in the sum of $6,547.94; and it was ordered that said plaintiffs forthwith pay said sum to said defendant, that the bill be dismissed as to the other defendants, and that the plaintiffs pay the defendants costs in a stated sum. No appeal was taken from an interlocutory decree which had overruled exceptions claimed by the plaintiffs to a master's report and had confirmed the report. In this state of the record the only question before us is whether the decrees appealed from are within the scope

of the bill and can be supported upon the facts disclosed. *Ledoux* v. *Lariviere,* 261 Mass. 242, 244. *Harrigan* v. *Dodge,* 216 Mass. 461.

The bill charged that in reliance upon false representations with regard to the rents of certain apartments the plaintiffs had purchased apartment buildings from the Hillcrest Realty Co. Inc. and in part payment had given a second mortgage on the property; that this mortgage had come by assignment to Hurwitz and Goldberg, the individual defendants, who had been entrusted with the duty of collecting all rents and applying them after paying charges of maintenance to the satisfaction of the mortgage; that on an accounting it would appear that the mortgage had been fully paid, but that the defendants claiming a balance to be due had begun proceedings for foreclosure. It prayed that the foreclosure be enjoined, that the conveyance be set aside and the consideration be ordered repaid, and that the defendants be compelled to account.

The answers denied false representations, admitted the receipt of the second mortgage and the collection and application of the rents, and alleged that upon accounting a net balance remained due from the plaintiffs or some of them which should be decreed to be due. They prayed such orders and decrees as equity and justice required.

The master found that no false representations had been made. The evidence is not reported. Nothing in the report, as matter of law, requires a different finding. This finding must stand. *Ledoux* v. *Lariviere,* 261 Mass. 242. It disposes of any right to a decree for setting aside the conveyances and for a return of the consideration. The bill thereafter stands merely for an accounting. On such a bill, if the accounting discloses a balance due from the plaintiffs or any of them, a decree awarding payment to the defendants or some of them has been held to be proper without the filing of a cross bill, *Braman* v. *Foss,* 204 Mass. 404, 411, *Wilde* v. *Sawtelle,* 232 Mass. 117, 123; and since the adoption of Equity Rule 6 (1926) has rendered cross bills unnecessary, if affirmative relief is asked in an answer

disclosing facts which will support it, there is manifestly additional reason for holding that the granting of affirmative relief to a defendant is not error in this decree.

The master's report shows that the premises were conveyed on April 24, 1929, as of April 1, 1929, to Cornelius E. Hale by the Hillcrest Realty Co. Inc. subject to a first mortgage securing $175,000 which Hale assumed and agreed to pay. On the same day, in part payment, he gave back a second mortgage for $3,940, payable on or before June 15, 1929. This mortgage note was signed by him and by Mary E. Hale, his wife, as makers, and was payable to the order of one Shalett, an officer of the Hillcrest company. Later on the same day he and his wife conveyed the equity to his sister Hannah F. Hale to protect him from possible attachments. Hannah F. Hale did not assume or agree to pay the mortgages. The second mortgage provided that "the mortgagee shall have the right to collect all rentals up to the time of the payment of the within mortgage, but from said rentals shall pay all current bills as they become due and the balance of the collected rentals shall be applied toward the reduction of the mortgage amount." Mrs. Shalett assigned this mortgage to the corporation, which in turn assigned it to Hurwitz and Goldberg. The holders of the mortgage have always collected the rents. June 24, 1929, Mrs. Shalett rendered an account showing $3,048.31 in her hands; but interest in $4,812.50 was due on the first mortgage on June 23, and Hale had the balance, with other money borrowed by him, applied in payment of the interest. He acknowledged the account as correct, and by letter, signed by Mary E. Hale, Hannah F. Hale and himself, authorized the payment of the $3,048.31 on the interest and empowered Mrs. Shalett "to continue collecting rents, renting suites, renovating them, pay all necessary expenses from collected rents, and credit us with the balance, if any, towards the above-mentioned second mortgage. The principal of the second mortgage shall still remain $3,940.00, plus accumulated interest." Payment had been duly demanded before the due date on June 15, but had not been made.

Another account was rendered on September 5, 1929, which showed a deficit after payment of expenses and the first mortgage interest, but recited, as a credit on the second mortgage, $1,973.63, the difference between the $3,048.31 surplus of rents shown June 24 and the $1,074.68 deficit shown on September 5. This account was agreed to be correct. The time of payment was extended to January 1, 1930, by a letter which recited: "It is distinctly understood and agreed that I or my nominee, am authorized to make all necessary expenditures for the upkeep of the buildings in question, such as payment of taxes, interest on mortgage, purchase of coal, make necessary repairs, pay insurance premiums, etc." January 7, 1930, demand for payment was made, but no payment resulted.

A third accounting was had on January 15, 1930. This showed $7,672 collected as rents and $7,906.06 disbursed as expenses which included $4,812.50 paid in December, 1929, as interest on the first mortgage. It summarized the earlier accounts and showed $2,243.08 to be due on the second mortgage. It was indorsed as correct by Hannah F. Hale. On January 15, 1930, she gave "To Whom It May Concern" an authorization to "the present assignees or holders of second mortgage . . . to collect all rentals on the property and to make all necessary repairs, pay all taxes, coal bills, water bills, electric bills and all other bills that are necessary to be paid for the aforesaid buildings. The said assignees or holders of the second mortgage are also authorized to rent suites, pay commissions for the same."

Tax bills as of April 1, 1929, had been received aggregating $4,340. At no time was there money enough on hand to pay them.

The principal of the first mortgage was coming due on October 15, 1930. This mortgage had been given by Hurwitz and Goldberg about 1925. They were makers and liable on the mortgage note. Cornelius E. Hale had assumed and agreed to pay it. All interested themselves in securing an extension. Promptness in paying the interest due on June 23, 1930, might affect this.

About four o'clock in the afternoon of Thursday, June 19,

1930, a paper signed by Hannah F. Hale and addressed to the Hillcrest company, Hurwitz and Goldberg was delivered at their office notifying them that "your services as agent for me at property . . . [that here in question] are hereby terminated and to be effected at once. I hereby demand from you an accounting of the receipt and expenses incidental to said property forthwith." Neither Hurwitz nor Goldberg was then in the office. On Saturday Hurwitz and Goldberg wrote Hannah F. Hale in care of Cornelius E. Hale that, in accord with the notice "received by us this day," they requested her to be present on Monday, June 23, at the office of their attorney where an accounting to date would be furnished. On June 23 Cornelius E. Hale on behalf of Hannah F. Hale wrote the attorney that he could not be present at the time and place specified, and added: "Kindly send me an itemized account showing all receipts and expenses from the commencement of January 15th to date."

A statement was mailed of receipts and expenses from January 15 to June 23, which showed collections of $9,151 and disbursements of $8,325.85, yielding a credit balance of $825.15, and leaving $1,417.93 due upon the second mortgage. It contained an item of $4,812.50 paid on June 20, 1930, for interest on the first mortgage due on June 23. The master finds that the items of the account were true and correct; and he reports: "I do not find that the complainants were injured in any way by the prepayment of interest by three days." On June 30 the holders of the second mortgage took possession for default and on July 2 made first publication of notice of a foreclosure sale on July 25. On July 9 they paid $1,518.20 taxes on one of the apartment buildings. $2,912 taxes remained unpaid. The bill was filed on July 9, 1930. At no time up to January 15, 1930, was there a sufficient sum on hand to pay the taxes and the second mortgage. The amount due on the second mortgage exclusive of taxes on June 23, 1930, was $1,417.93. The defendants have paid $53.40 for advertising the foreclosure. $50 was found to be a reasonable charge for services of counsel in the foreclosure proceedings and $500 in the defence of the action.

We find no merit in the contentions that the accounting holders of the second mortgage have made unauthorized payments, or that they should so have applied moneys in their hands as to extinguish that mortgage. The plaintiffs have assented to three accounts which treated it as unextinguished. It is true that the words of the last written authorization for collecting and applying the rents do not mention payment of interest on the first mortgage which was expressly authorized in an earlier writing, and that the language of the mortgage speaks only of application to "current bills," which would not ordinarily include payment of interest on prior encumbrances; but as Cornelius E. Hale had assumed and agreed to pay the earlier mortgage note, as he was liable for payment of the interest, and as it had in fact been paid from the collected rents and dealt with in the approved accounts, we think a finding is justified that such application was authorized.

The power to collect and apply rents was coupled with an interest such that it could not be summarily revoked by the letter of June 19. *Mulloney* v. *Black*, 244 Mass. 391.

Taxes were due at all times after April 1, 1929. There was no time when the collected rents could meet the taxes and extinguish the mortgage. The plaintiffs have failed in their proof. They cannot maintain their bill.

The proper decree would be bill dismissed with costs, were it not that the defendants in their answers prayed for affirmative relief, and, by the report, are shown to be entitled to recovery against Cornelius E. and Mary E. Hale, the makers of the second mortgage note. A balance of $1,417.93 with interest from June 23, 1930, is due to the owner of the second mortgage. That owner is also entitled to the expense of the proceedings for the apparently uncompleted foreclosure, including a reasonable fee for attorney's services, which had been found to be $103.40. *Bangs* v. *Fallon*, 179 Mass. 77.

A further sum is found to be due as the value of property which was not conveyed as contracted for in payment for the original conveyance to Cornelius E. Hale. The decrees appealed from set out that hearing was had after the confirmation of the report of the master. It may well be that at

such hearing further facts were shown which justify the order for payment to the corporation of all that was found to be due. No appeal has been claimed by Hurwitz or Goldberg. They are stockholders and officers in the corporation. The complainants will be protected by the decree in any payment made pursuant to its terms.

*Decrees affirmed with costs.*