FRANK D. WILDE *vs.* HERBERT C. SAWTELLE & another.

Suffolk.    December 2, 1918. — February 15, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Stockbroker. Equity Pleading and Practice,* Master's report. *Equity Jurisdiction,* For an accounting. *Evidence,* Disregarded as irrelevant, Admissions.

In a suit in equity for an accounting, where the bill did not allege any transactions entitling the plaintiff to recover under R. L. c. 99, § 4, money paid by him as margins on wagering contracts, a master, to whom the case was referred, erroneously admitted evidence relating to such wagering contracts, and the defendants filed exceptions to the master's admission of such evidence and to certain of his findings based on it, but it appeared by the master's report that all the issues of fact presented by the pleadings had been considered and passed upon by the master, and it was *held,* that it was not necessary to order an interlocutory decree sustaining the defendants' exceptions described above, because the master had found the facts necessary for the disposition of the case and, in so far as he had admitted evidence and made findings on the assumption that R. L. c. 99, § 4, was applicable, such evidence and findings could be treated as irrelevant and be disregarded by this court.

In a suit in equity for an accounting the bill alleged that, "although the plaintiff believes that nothing is due from him to the defendants, he hereby offers to pay to the defendants or to pay into court, as the court may order, all moneys, if any, which the court may find to be due from him to the defendants for which the defendants are entitled to hold the said securities as collateral." *Held,* that this was not an admission by the plaintiff of any indebtedness, as the plaintiff merely offered to pay the balance in case the accounting finally should go against him.

Although in a suit in equity for an accounting both parties may present claims and the defendant may have a decree in his favor without filing a cross bill, yet in the present case, where the defendants alleged certain counter-claims against the plaintiff, they introduced no evidence in support of their side of the account, and it accordingly was *held* that the plaintiff, after reimbursing the defendants for the net amount of a certain payment made by them, was entitled to a decree that certain bonds and certificates of stock bought on the plaintiff's account by the defendants should be delivered to him.

BILL IN EQUITY, inserted in a common law writ dated December 27, 1916, against the members of a firm of stockbrokers, doing business in Boston, alleging that (2) "beginning in April, 1915, the plaintiff from time to time deposited bonds and stocks with the defendants, but deposited no other property of any description with them," that (3) "the said bonds and stocks deposited by the

plaintiff with the defendants were so deposited to secure the defendants against any liability in carrying out purchases and sales of stocks which the plaintiff might from time to time direct the defendants to make for the plaintiff's benefit and for advances made as a part of such transactions," that (4) "the defendants thereafter from time to time made payments in cash to one Houghton, such payments exceeding $1,500, but of these the plaintiff was ignorant," that (5) "subsequent to April, 1915, the defendant Sawtelle requested that the plaintiff permit him . . . in the plaintiff's name to place with the said firm orders for the purchase and sale of securities and to receive one half the profits of such dealings, and in return the said Sawtelle promised that such dealings should be at the sole risk of him, the said Sawtelle, and that he would make good to the plaintiff any losses which might result from such dealings, and would so conduct such dealings, or place to the plaintiff's credit with the defendants securities in such amounts that the margin between the value of the securities and the total amount, if any, owed by the plaintiff to the defendants should be ample at all times," that (6) "from time to time the plaintiff placed with the defendants orders for the purchase and sale of securities on his own account," that (7) "without the knowledge or consent of the plaintiff, the defendants charged to the plaintiff the amounts from time to time advanced by the defendants to the said Houghton," that (8) "the defendant Sawtelle from time to time placed orders with the defendant firm for the sale of certain shares of stock, but failed to place to the plaintiff's credit securities sufficient for the protection of the plaintiff's account and in no way made good the losses charged by the defendants to the plaintiff resulting from the transactions of the defendant Sawtelle," that (9) "in consequence of the losses which the defendants charged to the plaintiff's account in connection with the transactions of the defendant Sawtelle, and in consequence of the amounts charged to the plaintiff's account and advanced by the defendants on their own responsibility to the said Houghton, the margin on the plaintiff's account with the defendants was depleted to such an extent that the defendants closed out various transactions which the plaintiff was carrying with them at great loss to the plaintiff," that (10) "the plaintiff has deposited with the defendants and the defendants now hold

the following securities belonging to the plaintiff [enumerated] . . . ," that (11) "the plaintiff is desirous of obtaining the said securities, but that the defendants have refused to deliver the same to him, unless the plaintiff will pay to them all the moneys that the defendants claim to have advanced to the said Houghton, and all the losses which they claim to have sustained because of the transactions of the said Sawtelle, and also all the losses which the defendants claim the plaintiff has sustained because of the plaintiff's individual transactions having been closed out by the defendants," that (12) "the plaintiff believes that on a proper accounting he not only would be entitled to his said securities without charge therefor, but also that the defendants are indebted to him," that (13) "the nature of the accounts between the parties is such that the accounts cannot be conveniently and properly settled and adjusted in an action at law," that (14) "although the plaintiff believes that nothing is due from him to the defendants, he hereby offers to pay to the defendants or to pay into court, as the court may order, all moneys, if any, which the court may find to be due from him to the defendants for which the defendants are entitled to hold the said securities as collateral."

The prayers of the bill were as follows:

"1. That an account may be taken between the parties and the indebtedness of the defendants to the plaintiff established and declared.

"2. Upon payment to the defendants of such amount, if any, as the court may find to be due from him for which they may hold the said securities, he [the plaintiff] may be allowed to redeem his said securities and that the defendants may be ordered to transfer and deliver them to him.

"3. Pending the termination of this suit and until the further order of the court, the defendants and each of them may be restrained from assigning, transferring or in any way encumbering the said securities or any of them.

"4. For such other and further relief as to this honorable court may seem meet."

The claims of the defendants set forth in their answers are described sufficiently in the opinion.

The case was referred to a master, who filed a report containing the findings that are stated in the opinion.

Both parties filed exceptions to the master's report, but those of the plaintiff afterwards were waived. The defendants' exceptions were founded on the following objections:

"1. That the master admitted evidence upon the question of the intent of the parties in their transactions complained of in the bill.

"2. That the master admitted evidence against the defendants' objections in support of the plaintiff's contention that in his transactions with the defendants he had no intention that there should be an actual purchase or sale of any of the stocks ordered to be bought or sold, and that the defendants had reasonable cause to believe that such intention existed.

"3. That the master admitted evidence against the defendants' objection in support of the plaintiff's claim that under the provisions of R. L. c. 99, the plaintiff was entitled in this proceeding to have delivered back to him the securities which he deposited with the defendants.

"4. That the master in his report makes findings as to the intention of the plaintiff and his agent in depositing securities with the defendants.

"5. That the master makes a finding in his report that the defendants had reasonable cause to believe that in giving his orders for the several transactions Houghton had certain intentions as set forth in said report.

"6. That the master excluded the defendants' offer of proof that in carrying out the transactions ordered by Houghton in the name of the plaintiff the defendants transmitted the orders to the firm of J. R. Williston and Company, who are members of the New York Stock Exchange in their usual course of business; that the defendants had to stand any losses incurred by J. R. Williston and Company in carrying out these transactions and that such losses were charged by the defendants against the plaintiff.

"7. That the master did not find as a conclusion of fact upon other facts found by him that the plaintiff was guilty of laches in the premises."

The case came on to be heard before *Fox,* J., upon the exceptions of the parties to the master's report. The plaintiff in open court waived his exceptions to the report, and, at the request of both parties, the judge reported the case for determination by this court

upon the pleadings, the master's report and the defendants' exceptions thereto, such decree to be entered as justice and equity might require.

The case was submitted on briefs.

*J. B. Studley & H. W. Bradlee,* for the plaintiff.

*R. Dow & F. L. Simpson,* for the defendants.

BRALEY, J.   If the plaintiff sought relief on the ground that his commercial dealings with the defendants, for which he asks an accounting, came within the provisions of R. L. c. 99, § 4, concerning the purchase and sale of stock on margins, he should have so framed the bill as to raise this issue. *Fiske* v. *Doucette,* 206 Mass. 275. And as there are no allegations of any violation of the statute, the master erred in admitting evidence in support of a cause of action which had not been pleaded.

But it is unnecessary to order an interlocutory decree sustaining the defendants' exceptions, for the master's report, in so far as he admitted evidence and made findings as if the statute were applicable, can be treated as irrelevant, since it appears that all the issues of fact presented by the pleadings were considered. If the allegations relating to certain agreements claimed to have been made with one of the defendants found in the fifth, sixth, seventh and eighth paragraphs of the bill are eliminated, as the plaintiff on the master's findings concedes that they must be, the plaintiff's case rests on the remaining allegations which in substance are, that from time to time he deposited with the defendants, doing business as a firm of stockbrokers under the name of Keveney, Sawtelle and Company, certain stocks and bonds to secure them against any liability in carrying out the purchases and sales of stocks which he might order and for advances made on such transactions. And their business dealings having ceased, an accounting is asked for to establish the indebtedness of the defendants with a return of the securities. It is further asked, in the alternative, that, if it appears that the plaintiff still owes the defendants, he may upon payment of the amount be allowed to redeem.

The master reports that the plaintiff gave to one Houghton a power of attorney "to handle any and all cash or securities now deposited to my credit or that may be deposited at any time in the future with Keveney, Sawtelle and Company . . . in his

discretion; also to buy or sell stocks and bonds for my account as he may elect. Hereby granting unto the said attorney full power and authority to act in and concerning the premises as fully and effectually as I might do if personally present." And Houghton thereupon delivered the power of attorney to the defendants and opened an account with them in the plaintiff's name. The master finds that the plaintiff thereafter "left all details of the transactions to Houghton . . . and he was satisfied that in all of the matters in relation to the transactions Houghton should act as his judgment might determine." The defendants rendered monthly statements to Houghton showing the condition of the account including the moneys paid to him, although his name did not appear, and the plaintiff is found to have been conversant with this mode of dealing, even if, as the master further reports, "he had no actual knowledge that Houghton had withdrawn money." It follows that the defendants who rightly dealt with Houghton as the plaintiff's agent are entitled to be credited with the payments they made to Houghton. *Allen v. Fuller,* 182 Mass. 202. *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277, 285. The plaintiff personally gave the order for the purchase of the shares of stock of the Germany Mining Company, which the defendants thereupon bought and have retained in their possession, together with the shares of stock of the Missouri, Kansas and Texas Railroad Company bought for the plaintiff on Houghton's order and the bonds and stock deposited by the plaintiff, all of which are enumerated in the report.

The master finds that "the 'short sales' made upon the account of the plaintiff numbered about twenty and represented over nine hundred shares of various stocks. Some of the transactions netted a profit, while others resulted in losses." The defendants "have paid to Houghton $1,533.48. They have charged interest against the account in various amounts and have given credits for dividends collected upon certain of the stocks which were the subject of some of the transactions. The method of keeping the account and the basis of the charges for interest were not made to appear and the state of the account was not made to appear other than that" the defendants "claim that as a result of the moneys paid to Houghton and the losses sustained by the series of transactions the plaintiff is indebted to them in the amount of $6,625.24 as of

December 11, 1916, and they claim the right to sell the securities and apply the proceeds to the debt of the plaintiff to them with interest thereon." But no finding whatever is made whether this is a valid claim, the amount of which in whole or in part should be charged against the plaintiff. It is true that in the eleventh paragraph the plaintiff says he "is desirous of obtaining the said securities, but that the defendants have refused to deliver the same to him, unless the plaintiff will pay to them all the moneys that the defendants claim to have advanced to the said Houghton, and all the losses which they claim to have sustained because of the transactions of the said Sawtelle, and also all the losses which the defendants claim the plaintiff has sustained because of the plaintiff's individual transactions having been closed out by the defendants." And in the fourteenth paragraph the plaintiff alleges that, "although the plaintiff believes that nothing is due from him to the defendants, he hereby offers to pay to the defendants or to pay into court as the court may order all moneys, if any, which the court may find to be due from him to the defendants for which the defendants are entitled to hold the said securities as collateral." But this is not an admission of any indebtedness. The plaintiff only offers to pay the balance, if the accounting finally goes against him. *Goldthwait* v. *Day*, 149 Mass. 185, 187. The defendants, however, respectively aver in their answers that "On or about December 11, 1916, the amount due to the defendants by the plaintiff was $6,625.24" and that "Under the terms of the agreement by which they hold said securities they have a right to sell the same in order to pay themselves the amount due by the plaintiff."

It is settled that in a suit in equity for an accounting both parties are actors and the defendant may have a decree in his favor without the aid of a cross bill. *Braman* v. *Foss*, 204 Mass. 404, 411. A claim of indebtedness is not proof of indebtedness. If the defendants contended that, notwithstanding the payments already made, there still remained charges against the plaintiff for the satisfaction of which the stocks and bonds could be applied, it was for them to introduce evidence proving their side of the account. But, not having done so, their rights must be determined by the report as it stands.

The plaintiff accordingly, upon reimbursing the defendants for

the amount of $414.50 with interest which they paid for the stock of the Germany Mining Company and the Missouri, Kansas and Texas Railroad Company, less any dividends received thereon after December 11, 1916, is entitled to a decree that the bonds and stocks be delivered to him and for his costs.

*So ordered.*