## FORINO COMPANY, INC. *v.* JACOB A. KARNHEIM.

Suffolk.   November 29, 1921. — March 3, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice,* Appeal; Master: motion to recommit report, motion to set aside report, motion to report evidence, exceptions to findings of fact, exceptions to refusal to find certain facts; Bill; Variance; Decree. *Equity Jurisdiction,* Accounting.

A motion in a suit in equity, supported by an affidavit which sets forth excerpts from testimony taken before a master and seeking a recommittal of the master's report for the finding of certain facts not reported, is addressed to the sound discretion of the trial judge, and an interlocutory decree denying the motion will not be reversed on appeal where no abuse of discretion is shown.

A suit in equity was referred to a master "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request." The master filed a report containing a report of facts found by him but no report of evidence. The defendant moved that the report be set aside and that the evidence be reported. At the hearing of the motion, a transcript of all the evidence taken by the master was before the

judge by agreement of the parties. The motion was denied and the defendant appealed. *Held*, that the motion was addressed to the sound discretion of the judge and that no abuse of discretion was shown.

Under a rule in a suit in equity directing a master "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request," the master cannot be required to make certain findings of fact, and an exception to his refusal to do so must be overruled.

Upon an appeal by the defendant in a suit in equity from a final decree awarding pecuniary damages to the plaintiff, a corporation, it appeared that the bill was for an accounting by the defendant as to certain joint enterprises set forth in the bill. The bill contained averments in substance that, following certain joint enterprises between the plaintiff and a former employer of the defendant, who had retired from business, the plaintiff and the defendant entered into an agreement, by the terms of which each in consideration of the promise of the other promised to the other that each should have one half of the net profits of the business thereafter done by the other and after the manner of the similar arrangement which up to that time had subsisted for many years between the plaintiff and the defendant's former employer; that pursuant thereto the plaintiff and the defendant had bought and sold wool, sometimes in the name of the defendant and sometimes in the name of the plaintiff; that the enterprise had come to an end and that the defendant had refused to account. The defendant answered in substance that, if made, the agreement was void because it was one of partnership and therefore beyond the plaintiff's corporate powers; that the agreement had to do only with one kind of wool and that the plaintiff was to receive only such profit as the defendant determined. A master found that there was no agreement for an equal division of profits, but that the parties "agreed generally to go in together on joint adventures," that each joint enterprise or series of enterprises was a unit by itself, and that the terms of the different joint ventures were not always the same; he stated the facts as to certain transactions which he found to be joint and also stated an accounting which was the basis of the final decree. *Held*, that

(1) The question of the nature of the transactions was one of mixed law and fact and was for the master to decide;

(2) Upon the findings of the master, the defence that the contract was voidable was untenable;

(3) An objection that the defendant was held liable outside of the scope of the bill was not well founded;

(4) The master's findings were decisive of the defence that the plaintiff's share of profits was to be fixed and determined by the defendant;

(5) There was no material variance between the contract as set out in the bill and the contract as found by the master;

(6) The allegations of the bill were broad enough to include the joint transactions found and described in the master's report;

(7) No reversible error was shown.

BILL IN EQUITY for an accounting, annexed to a writ of summons and attachment dated June 7, 1918.

The allegations of the bill, so far as now material, in substance were (fourth paragraph) that early "in the year 1916 the plaintiff

and the defendant entered into an agreement, by the terms of which each in consideration of the promise of the other promised to the other that each should have one-half of the net profits of the business thereafter done by the other, and after the manner of the similar arrangement which up to that time had subsisted for many years between the plaintiff and one George Harrington, who was then about retiring from the wool business theretofore for many years conducted by him in Boston in which said defendant had been employed;" that (fifth paragraph) in "pursuance of this contract . . . the plaintiff and defendant have ever since bought and sold wool, sometimes in the name of the defendant and sometimes in the name of the plaintiff, and in the course of this business a very large number of separate purchases and of separate sales have been made, and a very large number of separate items of money have been received and a very large number of separate items of disbursements have been made"; that (eighth paragraph) all "the times have elapsed and all conditions have been fulfilled necessary to entitle the plaintiff to a full accounting of the business aforesaid done by the defendant, and the payment over of the balance due the plaintiff on such account;" that (ninth paragraph) the "account of said business has, pursuant to agreement between the plaintiff and the defendant, been kept by the defendant and not by the plaintiff, and the defendant has within his possession and control the means of stating said account fully, but the defendant though often requested, has declined and still declines to account to the plaintiff for the business done as aforesaid and the payment over of the balance due to the plaintiff thereon;" that (tenth paragraph) the "plaintiff has fully accounted to the defendant for all business done by the plaintiff and has paid over to the defendant all sums due to the defendant thereon;" and that (fourteenth paragraph) all "the transactions of purchases and sales or otherwise during said business have been closed and the moneys collected in by the defendant and nothing remains to be done except for the defendant to account for said business to the plaintiff and to pay the plaintiff the balance due the plaintiff;" except that (fifteenth paragraph), "the defendant may have undertaken without the knowledge of the plaintiff purchases or sales on said business which are still incomplete." The prayers of the bill were for an accounting by the defendant "for the business

conducted by the defendant for account of the plaintiff and the defendant equally, as set forth in the bill of complaint, and that the defendant be ordered to pay to the plaintiff the balance found due the plaintiff on such accounting with interest and that the plaintiff have such other and further relief as this court deems proper."

The defendant's answer, as amended, so far as material, in substance denied the making of the agreement alleged in the bill, and averred that, if the agreement had been made, it would have been *ultra vires* and void as an attempted agreement by a corporation to form a partnership; further averred that an agreement was made for a joint venture in Spanish wool, by the terms of which the defendant was to furnish the capital and credit and was to attend to the purchasing of the wool, the plaintiff was to attend to all the selling of the wool and its officers were to devote all their time and use their best efforts in that undertaking, and the plaintiff was to receive a proportion of the profits to be fixed by the defendant in his discretion; that all the purchases of Spanish wool were made by the defendant through his employee, one Duggan, sent by him to Spain, and that nearly three fourths of the sales were made by the defendant; that the plaintiff's officers did not devote all their time and their best efforts to the sale of the wool; and that their conduct in that particular was an entire breach of the agreement; that in November, 1917, the defendant made another distinct agreement with the plaintiff with respect to the importation and sale of South American wool on a commission basis, having the assistance of Duggan in South America in making purchases; that the agreement was carried out and some wool was purchased and sold on a commission basis; that the defendant had furnished the plaintiff with a complete and accurate account of the Spanish wool business, but that the plaintiff had not accounted to the defendant for the South American wool business. A copy of the defendant's account so furnished was annexed to the answer.

The defendant also was permitted to file a cross bill seeking an accounting for damages sustained by reason of the plaintiff's failure to attend to the selling of the Spanish wool, and to recover the defendant's expenses and his share of the net profits in the South American enterprise.

The suit was referred to a master under a rule directing him

"to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request."

In his report, the master described certain joint ventures, mostly in "carpet wools," carried on by the plaintiff with one George Harrington in the years from 1905 to 1916 under an agreement never reduced to writing. The defendant succeeded to Harrington's business on July 1, 1916. At that time two of the ventures were uncompleted: one as to a lot of thirty-two bales of wool from Syria already paid for by Harrington, and the other as to one hundred and twenty-four bales from Asia Minor not paid for. The defendant received Harrington's interest in these wools.

The defendant and the officers of the plaintiff ("the Weinbergs") then had a conference. The master stated that the evidence was contradictory as "to what was said and agreed upon at that conference." "The joint ventures between the Weinbergs and Karnheim at the beginning were also confined to carpet wools, those being the ones the most salable, and in which the Weinbergs had been particularly active. Later, however, as the wool market changed owing to war conditions and carpet wools ceased to be in demand, the joint ventures were extended to other kinds of wools, and even to wools sold on commission. I find however that there was no such arrangement as claimed by the Weinbergs that there should be an equal division between them and Karnheim of all profits in any business done by either during the period of their joint ventures. I find on the contrary that the parties agreed generally to go in together on joint adventures but that each joint enterprise or series of enterprises was a unit by itself and that the terms of the different joint ventures were not always the same. . . .

"Beginning with July 1, 1916, the Weinbergs and Karnheim entered upon a series of joint ventures which lasted up to sometime early in 1918 when their business relations ceased. Until the fall of 1917 Karnheim had no transaction in wool other than those in carpet wool bought on the joint account except a small lot of fine wool bought by him and sold to the Saxonville Mills, and the lots of thirty-two and one hundred and twenty-four bales above referred to as inherited, so to speak, from Harrington; all three

lots being claimed by Karnheim to be outside their joint enterprise. The Weinbergs claimed otherwise."

The master then made findings as to transactions, which he found to be joint transactions of the parties, in "South American wools," and as to transactions in "Cape wools," which he found were not joint transactions. He found for the plaintiff on the cross bill, finding specifically "that the Weinbergs made all reasonable and proper efforts to sell the joint account wool, and did sell or contribute to the sale of a large part of it."

The master then stated the joint account of the parties, finding that the defendant owed the plaintiff, including interest to October 14, 1920, $15,571.20 to which, he found, should be added interest at six per cent on $13,312.44 from that date.

The defendant filed forty-nine objections to the report and exceptions based thereon. All but three of these, which related to certain evidence admitted by the master, were objections either to findings of fact made by the master or to his failure to make certain findings.

The defendant also filed a motion, supported by affidavits, to set aside the master's report and for a report of the evidence. This motion and the exceptions were heard by *Sanderson*, J., a transcript of the evidence and arguments at the hearings before the master being submitted to him at the time; and on May 17, 1921, he filed a memorandum ordering a decree denying the motion, sustaining certain exceptions which, he stated, did "not affect the account or the conclusions reached by the master in his statement of the joint account in his report," and otherwise confirming the report.

On June 10 and June 13, 1921, the defendant filed a motion and a supplementary motion to recommit the report to the master for the finding of additional facts. The motions were supported by affidavits setting out, in about one hundred pages of the printed record, portions of the testimony at the hearings before the master. These motions were heard by *Sanderson*, J., and by his order there was entered on June 21, 1921, an interlocutory decree "that the motion to set aside the master's report and for a report of the evidence be . . . denied; and that [certain of] the defendant's exceptions to the master's report, . . . be . . . sustained; and that the questions raised by the exceptions sustained do not

affect the account or the conclusions reached by the master in his statement of the joint account in his report; and that all other exceptions of the defendant to the master's report are overruled; that the motion and supplemental motion to recommit the master's report are denied, and that the master's report be . . . in all respects (except for the exceptions sustained as aforesaid) confirmed."

On June 21, 1921, there also was entered by order of *Sanderson,* J., a final decree ordering the defendant to pay to the plaintiff $16,115.93 and $23.64, costs of suit. The defendant appealed from both decrees.

*A. Lincoln,* for the defendant.

*E. F. McClennen,* for the plaintiff.

BRALEY, J. The motions to recommit, and to set aside the master's report, and that the evidence be reported, were addressed to the sound discretion of the judge, whose denial of each motion shows no abuse of his power. *Smith* v. *Lloyd,* 224 Mass. 173, 175, and cases there collected. *Hannaberry* v. *Green,* 225 Mass. 201.

The defendant moreover at the hearing on his exceptions had the benefit of a review by the judge of all the evidence and arguments of counsel before the master, which by consent of parties had been transcribed for his use. The exceptions to the master's refusal to make the findings requested are wholly untenable for reasons stated in *Warfield* v. *Adams,* 215 Mass. 506, 519, which were followed in *Corey* v. *Independent Ice Co.* 226 Mass. 391, 392, 393. The exceptions which were sustained did not affect the merits, and, the evidence not having been reported, the master's findings of fact to which the remaining exceptions relate are conclusive. The interlocutory decree overruling these exceptions and confirming the report was properly entered.

The question for decision on the appeal therefore is the usual one, whether under the pleadings and the master's report, with such reasonable inferences of fact as may be drawn therefrom, the final decree awarding money damages to the plaintiff should be reversed. *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37, 38. *Kennedy* v. *Welch,* 196 Mass. 592. *Danforth* v. *Chandler,* 237 Mass. 518.

The original bill for an accounting, and the cross bill seeking damages for alleged breach of contract by the Forino Company,

Incorporated, a foreign corporation under which one Herman Weinberg and one Jacob Weinberg did business, were properly tried together, and may be treated as embracing every material aspect of the litigation. *Braman* v. *Foss,* 204 Mass. 404, 411. *Martin* v. *Murphy,* 216 Mass. 466, 467. *Wilde* v. *Sawtelle,* 232 Mass. 117, 123. See *Tansey* v. *McDonnell,* 142 Mass. 220.

The parties were respectively engaged in buying and selling wool with separate places of business, when an arrangement, never reduced to writing, was agreed upon to buy and sell wool for their mutual advantage. The defendant in his answer while admitting the existence of a joint enterprise or series of enterprises with the Weinbergs but not with the plaintiff, avers, that if a joint enterprise existed it was an attempt to create a partnership which was voidable because it was in excess of the plaintiff's corporate powers. *Hoshor-Platt Co.* v. *Miller,* 238 Mass. 518. It is further averred that the contract covered only carpet wool and the plaintiff was to receive only such proportion of the profits as might be fixed and determined by the defendant. The fourth paragraph of the bill however does not allege a partnership. It states, in so far as material, that by the terms of the agreement "each in consideration of the promise of the other promised to the other that each should have one half of the net profits of the business thereafter done by the other." The question was one of mixed law and fact which the master properly could decide. *Gunnison* v. *Langley,* 3 Allen, 337. *Bradley* v. *Borden,* 223 Mass. 575. And his findings, that there was no agreement for an equal division of profits, but the parties "agreed generally to go in together on joint adventures," and that each joint enterprise or series of enterprises was a unit by itself, and that the terms of the different joint ventures were not always the same, does away with the defence of a voidable contract.

The general objection that the defendant is thus bound and held liable outside of the scope of the bill is not well founded. *Drew* v. *Beard,* 107 Mass. 64, 73. The findings are also decisive of the averment that the plaintiff's share of the profits was to be fixed and determined by the defendant in his discretion. *Curran* v. *O'Donnell,* 236 Mass. 357.

A further contention is, that there is a material variance between the contract alleged and the contract found by the master. But

the general allegation that "the plaintiff and the defendant entered into an agreement, by the terms of which each in consideration of the promise of the other promised to the other that each should have one half of the net profits of the business thereafter done by the other," is broad enough to include transactions on their joint account as found and described in the report.

The period of their joint action and business relations began July 1, 1916, and ended early in 1918, and it is found in favor of the plaintiff, and against the defendant's contention, that until the fall of 1917 the adventures were substantially confined to "carpet wools." The further allegation, that the business should be done after the manner "of the similar arrangement . . . which had subsisted for many years between the plaintiff and one George Harrington, who was then about retiring" and was succeeded by the defendant, is also sufficient to sustain the bill. The master was satisfied that, after Harrington retired and the defendant came in, the joint undertakings were continued on the same general basis as before. The master, after recitals not necessary to be repeated, states, that in 1916 an agent, who by agreement with the plaintiff had been sent abroad by the defendant "to buy Spanish carpet wool," made considerable purchases of wool which on the whole was sold at a profit. The defendant was properly allowed the agent's expenses, salary and bonus for services rendered on joint account. But, the parties not having been partners associated for the general purpose of buying and selling wool, the master correctly held that purchases by either party without the consent of the other were not to be considered in stating their joint account. The question of their contractual relations in each adventure depended upon evidence not before us. We discover no error of law in either of his rulings or findings, that the "thirty-eight bales" of Spanish wool purchased by the defendant without the assent of the plaintiff, and the transactions by the defendant covering the South American "wools," and the cape "wools" in which the plaintiff did not participate were not joint adventures. The master rightly refused to include them in an accounting under the original bill or the cross bill.

It is broadly urged that the report is not in accordance with, but goes beyond the frame of the original bill, and is so contradictory and repugnant that the plaintiff should be denied relief, or

the court should order a decree for the defendant on his cross bill. But the material conclusions of the master are in accordance with his subordinate findings, all of which, as we have said, rest on evidence not shown by the record.

A full review in the trial court and in this court fails to disclose reversible error. The final decree should be affirmed with costs of the appeal.

*Ordered accordingly.*