WILLIAM M. HEFTYE & another *vs.* ELLEN M. KELLEY.

Essex.  November 21, 1927.— March 2, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction,* Rescission. *Equity Pleading and Practice,* Master: findings. *Fraud.*

Upon appeal from a final decree dismissing a suit in equity for rescission of a sale of land by reason of alleged false and fraudulent representations by the defendant as to ways shown upon a plan being town ways, and as to a supply of water to the premises, it appeared that a master, without a report of the evidence, had found facts amply warranting a conclusion that the plaintiff was not induced to buy by false representations made by the defendant. *Held,* that the decree dismissing the bill must be affirmed.

BILL IN EQUITY, filed in the Superior Court on October 23, 1925, for rescission of a sale of land by the defendant to the plaintiffs by reason of alleged false and fraudulent representations by the defendant.

The suit was referred to a master. Material facts found by the master without a report of the evidence are stated in the opinion. After a hearing by *Walsh,* J., upon the

pleadings and the master's report, a final decree was entered dismissing the bill.    The plaintiffs appealed.

The case was submitted on briefs.

*W. M. Heftye,* for the plaintiffs.

*A. P. Sullivan,* for the defendant.

BRALEY, J.    The plaintiffs, who are husband and wife, bought of the defendant a parcel of land situated in the town of Middleton.    The deed among other recitals described the premises as lot 42 on a plan made in 1906, showing many lots, which had been recorded in the registry of deeds.    The plaintiffs allege they were induced to purchase the property by the false representations of the defendant, her servants and agents, that the roads bounding the land and shown on the plan had been taken over by the town, and were then owned by the town, and also stated as a fact that work had been recently done on the roads, and displayed a plan of the land showing the roads with their names, and also stated, that "the place was well settled, . . . there was a town system of electric lights, [and] that water had been put in by the town."    *Wiley* v. *Simons,* 259 Mass. 159, 161. The plaintiffs ask that rescission may be decreed, or in the alternative that their damages may be ascertained and assessed.

The plaintiffs' exceptions to the report of the master to whom the case was referred not having been argued, the question is, whether on the pleadings and report, with such inferences as the judge could draw therefrom, the decree dismissing the bill was erroneous.

The master reports that the defendant showed the plaintiff William M. Heftye, hereinafter referred to as the plaintiff, a copy of the plan, and that he had visited the tract, over which he walked, before he saw the plan.    By consent of the parties the master also took a view of the tract accompanied by counsel.    It is stated that no material changes had occurred between the time of the view and when the plaintiff looked the land over, except that the plaintiff contended that the roads at the time of the hearing were in poorer condition than when he first saw them.    The plaintiff, after the plan was shown to him at the defendant's house,

went upon the lot with the defendant's daughter, taking the plan with him. The boundaries were either lacking or so indistinct that the plaintiff asked that they be staked and this was done before the conveyance was made. It then appeared that the only way of approach to the lot, except on foot from Maple Street, a public way bounding the whole tract on the north, was the way leading into the tract over the railroad in Maple Street, and that this way, hardly more than a cart path, instead of running along the side hill where the plaintiffs built their bungalow and actually abutting on lots 40, 41 and 42 as the location of Highland Road on the plan required, turned considerably westward of these lots. The master finds: "In the plan [face] of these self apparent incongruities between the representations of the plan and actual situations and circumstances of which the plaintiff had knowledge before accepting his deed, if it be assumed that the defendant or her daughter or both had said to him that the ways 'bounding said land' were town roads no reasonable man would have been credulous enough to believe or be deceived in such a statement. At least, if the question whether the ways were town roads or not was of real importance to the plaintiff, the indications that they were not, were clearly sufficient to put him on inquiry for authoritative information." Mrs. Murphy, a person whom the plaintiff met on his first visit to the land, and a pioneer camper on the tract, testified that she told him the roads were "not such as are on the map" and "the people clubbed together and paid toward keeping the roads." The master concludes that the plaintiff was not deceived by the representations of the defendant or of her daughter and agent concerning the roads but, having seen and known their situation, accepted them as they were. It is plain that the plaintiff had ample opportunity to examine the land and the layout of the roads in connection with the plan, and to make such inquiries as to actual conditions as he chose. If the plaintiffs purchased under such conditions they were not induced to buy by the defendant's alleged fraud and deceit. The master's conclusion was warranted. *Poland* v. *Brownell,* 131 Mass. 138. *Mabardy* v. *McHugh,* 202 Mass. 148.

The main through which the water supply for the town of Danvers is pumped runs through Maple Street. The first and principal sale of lots occurred in 1908. In that year one of the lot owners at his own expense obtained a supply of water for his house by a half inch service pipe which tapped the main and ran under the railroad. A second service pipe also was attached at private expense which supplied water to cottages on application to the water department of Danvers to which the water rates were paid. This condition of affairs had existed for eighteen years before the plaintiffs purchased. It is found that as the number of owners increased the supply became inadequate and if those nearest the water main were using the water there was only a dribble from wide open faucets further along the line. The plaintiffs acquired title August 1, 1924, and on August 18, 1924, made an application to the water department for town water, which resulted in the plaintiffs' lot being connected with one of the privately owned service pipes. But in the spring of 1925 this connection was found to have been shut off, and the plaintiffs thereafter were unable to obtain water. It did not appear that the defendant had anything to do with the tapping of the main, or the laying of the service pipes beyond permitting them to be placed in the tract, and when called as a witness by the plaintiffs and asked, "Did he (meaning the plaintiff) ask about the water before the deed?" she answered, "He asked me if I could get water and I said, 'Yes, same as he could get electric light or groceries or anything.'" "Didn't you tell him the system was owned by the town?" "No."

The credibility of the witnesses was for the master, and his findings on all the evidence "That the plaintiff's allegation that the defendant made false representations 'knowing that they were false and with the intention to induce the plaintiffs not to make inquiries from the proper authorities as to the truth or falsity of said representations' is not sustained," should not be reversed. *Forino Co. Inc.* v. *Karnheim*, 240 Mass. 574. The decree therefore must be affirmed.

*Ordered accordingly.*