HANNAH M. WEBSTER *vs.* WILLIAM J. KELLY & another.

Suffolk. December 9, 1930. — February 25, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Attorney at Law. Equity Jurisdiction,* To cancel deed, To require recon-
veyance by fiduciary. *Equity Pleading and Practice,* Master: recom-
mittal; Appeal.

An elderly widow, by reason of kindness of an attorney at law to her
husband and to her, desired to give him several articles of furniture
in her residence and to give him her residence after her death. The
attorney informed her that in the circumstances he ought not to make
her will and "suggested that she go to one of the judges of the local
court for that purpose." She did so and executed a will to that effect.
When she took the will to the attorney and asked him if it was satis-
factory, he, having in mind a possible contest of the will, suggested
that a deed of the premises would be more effective in carrying out
her wishes. She accordingly went to the same judge who, "as a
matter of routine," made out deeds conveying the property to herself
for life and after her death to the attorney, she neither asking for nor
receiving any information from the judge or from the attorney as to
the legal effect of the deeds. *Held,* that
    (1) It was the clear duty of the attorney not only to advise the
client to have independent advice but to see that the advice when
given was directed to the significance of her proposed act and that
it made clear to her that the legal effect of her deed was to give the
attorney a present vested and irrevocable title to the property con-
veyed as distinguished from a right or title to come into existence at
the time of her death;
    (2) The attorney not having performed such duty, the conveyance
was voidable.
In a bill in equity by the elderly woman to have the conveyance above
described declared void and cancelled, the last paragraph stated that
she was ready and willing and offered to pay the attorney any sum
which the court might find to be justly and equitably due to him.
At different stages of the proceedings, the suit was heard by two
masters. The first master found that, although the services of the
defendant were not rendered under any contract to make no charge
therefor, he was willing to wait for his compensation, and that he told
her she might pay him or give him what she liked when she got on
her feet, if and when she was able; that he knew it was extremely
doubtful if she would ever be able to pay him, and that he undertook
to render said services in a sincere desire to relieve her, as the widow
of his deceased client, from a distressing financial situation. The
second master found that both parties understood that the plaintiff
was to pay the defendant for whatever services he rendered to her,

and that the defendant "told her that he was willing to help her . . . that he stood ready to serve her and that she might pay him later on." The value of the services was found and a final decree was entered directing the defendant to reconvey the property to the plaintiff upon receipt by him of the money due him. The plaintiff appealed. *Held*, that

(1) The findings of both masters showed an implied promise to pay a reasonable compensation for the defendant's services;

(2) The same relationship of trust and confidence which gave rise to the plaintiff's right to a reconveyance made it inequitable that the plaintiff should regain the property without paying the defendant the money earned by legal services rendered to her;

(3) The decree was proper.

The determination of a motion in a suit in equity to recommit a report to a master for a report of evidence lies in the sound discretion of the trial judge.

Slight discrepancies in a report of a master in a suit in equity do not require a recommittal and a new report.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated December 13, 1923, for cancellation of a deed conveying to the defendant William J. Kelly a title in remainder to certain real estate after a life estate in the plaintiff, and of a deed by Kelly conveying that interest to his wife, the defendant Maud A. Kelly.

In the last paragraph of the bill the plaintiff averred that she was ready and willing and thereby offered to pay to said Kelly any sum which the court may find to be justly and equitably due to him in all the circumstances. The prayer of the bill sought cancellation of the deeds "as fraudulent and void."

Proceedings in the Superior Court, when the suit was heard in various stages by *Morton*, J., and by *McLaughlin*, J., and various interlocutory and final decrees there entered, are described in the opinion. The plaintiff alleged exceptions to certain rulings made and appealed from the decrees. The defendants appealed from the final decree.

*G. R. Farnum*, (*J. J. O'Neill* with him,) for the defendants.

*H. W. Packer*, for the plaintiff.

PIERCE, J. This is a bill in equity brought by Hannah M. Webster against the defendant William J. Kelly, hereinafter called the defendant, and his wife, Maud A. Kelly, wherein the plaintiff prays that they be ordered to re-

convey the premises described in the bill of complaint. Upon the completion of the pleadings the case was referred to a master under the usual rule. Upon the filing of his report a judge of the Superior Court made rulings on exceptions, overruled exceptions to the report numbered one to ten inclusive, and number thirteen, and sustained exceptions numbered eleven and twelve. He refused to recommit the report and ordered that a decree be entered " adjudging said deeds to be fraudulent and void," and directing that upon the payment of a stated sum of money a reconveyance of the premises described be made to the plaintiff. Upon this order no interlocutory decree was filed and entered until April 2, 1930.

On January 12, 1926, the same judge referred the cause to a " Special Master to hear the parties and their evidence under the usual order of reference and to report upon the following issues: (1) Is the complainant liable to the respondent William J. Kelly for legal services rendered, and, if so, (2) The services rendered and the amount which the respondent William J. Kelly is entitled to recover therefor." Pursuant to the order, the special master heard the parties, examined their evidence and exhibits and reported his findings to the court on January 7, 1927. The plaintiff filed eighty-one objections to this report. She also filed a motion " (1) That the report by . . . [the special master] be declared of no effect and stricken from the record. (2) That the cause be recommitted to the said . . . [special master] for the sole purpose of his reporting the evidence that was heard before him. (3) That the court determine the amount, if any, of defendant's compensation upon the evidence thus reported and upon any additional evidence which the court may allow the parties to introduce. (4) For such other and further relief as to the court may seem just and proper." The plaintiff also filed an affidavit dealing with her objections and exceptions to the master's report, and a further affidavit " designed to give a connected story of what Kelly himself claimed he did for Mrs. Webster."

On February 28, 1927, the motion to recommit was allowed " only to report the evidence upon the exceptions " numbered sixty-four, seventy-four and seventy-five; the ruling on these exceptions was to await the coming in of the evidence. All other exceptions were overruled. The plaintiff excepted to the rulings on exceptions and motion to recommit and duly appealed to this court.

The special master pursuant to the order duly filed in court a supplementary report with a report of the evidence. The plaintiff filed a motion for the recommittal of this report. This motion was denied, after hearing, on October 25, 1927, and on March 3, 1928, an interlocutory decree was filed wherein it was ordered, adjudged and decreed " that each of the several objections and exceptions of the plaintiff to the master's supplementary report be and hereby is overruled; that the plaintiff's motion to recommit the said supplementary report be and hereby is overruled; that the plaintiff's exception to the denial by the [special] master . . . of plaintiff's motion to strike out the question and answer on pages 8 and 9 of his final report be and hereby is overruled; that each of the plaintiff's several exceptions to the admission and exclusion of evidence appearing on pages 8, 9 and 10 of the supplementary report be and hereby is overruled, and that the final report of the [special] master . . . and his supplementary report be and hereby are confirmed." From this decree the plaintiff appealed.

On March 14, 1930, the plaintiff filed forty-nine requests for rulings and findings. On March 29, 1930, she filed a motion that all the evidence before the special master, the same being duly transcribed and available for filing as a part of the record, be filed with the court. This motion was denied and the plaintiff excepted. As respects this motion the judge of the Superior Court filed the following statement for incorporation in appeal record: " When this case was about to be referred to . . . [the special] master to determine whether Mr. Kelly was entitled to be compensated by Mrs. Webster for legal services rendered, and, if so, in what amount, the parties

agreed upon a form of interlocutory decree, referring the case accordingly. In the form agreed upon, it was provided that the master should 'hear the parties and their evidence and to report the evidence, his findings of fact, and rulings of law to the court upon the issues agreed upon.' This agreement was signed by all the parties and was submitted to me; and I, after retaining the form of proposed decree, struck out the words 'the evidence, his findings of fact, and rulings of law to the court,' inserting in my own handwriting, in lieu of the words just struck out, the words 'under the usual order of reference,' leaving the order in its present form, and handed the decree, thus referring the matter to . . . [the special master], to the clerk, who entered it. The parties then went to hearing on it, and the master reported accordingly. After the decree had been finally entered, counsel for the plaintiff never made any objection whatsoever to the change as above noted, and went to the hearing before the master' with full knowledge of said change. Not until the hearings before me on the form of the final decree in the case did counsel ever make any reference to the change, except in so far as the record affirmatively shows."

In connection with the final decree the plaintiff filed requests for rulings, and at her request, an interlocutory decree was filed on April 2, 1930, relating to the rulings of the judge dated January 12, 1925, *supra.* On June 18, 1930, a final decree was entered adjudging the deed from the plaintiff to the defendant and from him to his wife voidable, and voiding them; and decreeing that the plaintiff was indebted to the defendant for $253.82 expended by him in repairing the premises which had been deeded to him, $10 for money loaned, $6,000 for legal services and $1,219.33 interest from January 7, 1927 (the date of the filing of the special master's report) a total of $7,-483.15. The decree further provided that upon payment by the plaintiff to the defendant of this total sum, with interest thereon to the day of payment, within ninety days from the date of the entry of the decree, the premises should be deeded back to the plaintiff and she should

recover her costs, but upon the failure of the plaintiff
to pay said sum within said time the bill should be dis-
missed, but without costs. From this final decree both
plaintiff and defendants appealed to this court.

The circumstances which gave rise to this suit, as they
are disclosed by the reports of the masters, in substance
are as follows: after the death of her husband on Decem-
ber 24, 1918, the plaintiff, an elderly woman who had
become estranged from her adopted son, was in need of
" advice in regard to the management of her real estate."
She was the owner of her residence, 677 Cambridge Street,
in the Brighton district of Boston, and of two apartment
houses. The defendant " was a tenant " in one of these
apartments. She consulted the defendant for the reason
that he was an attorney at law and for several years
prior to her husband's death had acted as his counsel in
various matters. Her husband had great friendship for
the defendant and great confidence in him, and on his
dying bed told the plaintiff to consult the defendant in
regard to her affairs and that he would look after her
affairs properly and competently, both as an attorney and
as a friend. The defendant, with the assistance of the
adopted son of the plaintiff, succeeded in restoring the
apartments to a paying basis and in selling one of them
at an advantageous price. In July, 1920, the plaintiff,
who had paid the defendant nothing for his services, be-
cause he had served her husband as legal adviser without
compensation and had helped her since her husband's
death, expressed the wish to give him several articles of
furniture in her residence and to give him her residence
after her death. The defendant assented, but informed
her that in the circumstances he ought not to make
the will and " suggested that she go to one of the judges
of the local court for that purpose." In consequence of
this advice she made out a list of the furniture which she
desired to leave the defendant and went with it to a
judge of the Municipal Court of the City of Boston for
the Brighton District. On September 22, 1920, in the
presence of the presiding judge of that court and two

witnesses, she executed a will which purported to appoint the defendant executor and to give him a large amount of furniture and the house, land and garage described in the bill of complaint. This will remained in the custody of the defendant until the hearing before the master.

When the plaintiff took this will to the defendant she asked him if it was satisfactory and he, having in mind a possible contest of the will, suggested that a deed of the premises would be more effective in carrying out her wishes. The master finds " that the respondent did not instruct or request the complainant to execute such a deed." On October 2, 1920, the plaintiff went alone to the office of said judge of the Boston Municipal Court for the purpose of executing a deed, and the judge " drew a deed " from the plaintiff to John F. Holloran and then drew another deed from Holloran conveying the said premises to the plaintiff " for and during the term of her natural life, with remainder to William J. Kelly . . . in fee." These deeds were duly executed, acknowledged and recorded. The master finds that the plaintiff, " at the time of the execution of said deeds, intended to give the respondent said house and land after her death for the reason stated in said will; that she had an opportunity to read said deeds before the same were executed and that she neither asked for nor received any information from the respondent or Judge Connelly as to the legal effect of said deeds." He further finds that the said judge " dealt with said deeds as a matter of routine, that he had no reason to suspect that the complainant did not understand what she was doing, and that he was concerned chiefly with satisfying the legal requirements to make said will and deeds effective." After the deed from Holloran was executed, it was delivered by the plaintiff to the defendant and kept by him until introduced in evidence before the master.

In October, 1920, the plaintiff became apprehensive as to her ability to live comfortably upon the income obtainable from ordinary investments and with the advice and assistance of the defendant invested her capital in

annuities payable to herself and ceasing at her death. Performing all legal services required in the plaintiff's affairs, the defendant acted as her counsel until about August or September, 1921. The defendant "not . . . on account of said will or deeds or in consideration thereof," loaned the plaintiff in 1922 $10, and in 1924 paid $253.82 for the repair of her residence. On January 19, 1922, the defendant conveyed the remainder interest in the property to his wife, Maud A. Kelly. On the above facts the judge ruled rightly that the relation of attorney and client which here existed required that the defendant before accepting the deed should have used active diligence to see that his client was fully informed of the nature and effect of the transaction proposed and of his own rights and interests in the subject matter involved, and should have seen to it that his client had independent advice in the matter or else should have received from him such advice as he would have been expected to give had the transaction been one between his client and a stranger, and should have seen that his client was so placed as to be enabled to deal with him at arm's length without being swayed by the relation of trust and confidence which existed between them. *Hill* v. *Hall,* 191 Mass. 253, 262. *Manheim* v. *Woods,* 213 Mass. 537. *Smith* v. *Weeks,* 252 Mass. 244, 251. *Dunn* v. *Dunn,* 15 Stew. (N. J.) 431.

In this case, although an independent attorney drafted the will and the deeds, he did so " as a matter of routine." It was the clear duty of the defendant not alone to advise the plaintiff to have independent advice but to see that the advice when given was directed to the significance of her proposed act and that it made clear to her that the legal effect of her deed was to give the defendant a present vested title to the property conveyed as distinguished from a right or title to come into existence at the time of her death. Here, while there is no taint of fraud or chicanery on the part of the defendant, he failed in his duty because, knowing that the plaintiff by her will intended to give him only an estate to take effect at her death, he did not see to it that she was advised and

that she understood her deed would not be revocable at her pleasure but in law was a conveyance of a present estate in fee subject to her life enjoyment. The defendants' appeal from the final decree voiding the deed from the plaintiff to John F. Holloran, the deed from John F. Holloran to the defendant, and the deed from the defendant to Maud A. Kelly is without merit.

The plaintiff's appeal is also without merit. The first master found that, although the services of the defendant were not rendered under any contract to make no charge therefor, he was willing to wait for his compensation, and that he told her she might pay him or give him what she liked when she got on her feet, if and when she was able; that he knew it was extremely doubtful if she would ever be able to pay him, and that he undertook to render said services in a sincere desire to relieve her, as the widow of his deceased client, from a distressing financial situation. The second master found that both parties understood that the plaintiff was to pay the defendant for whatever services he rendered to her, and that the defendant " told her that he was willing to help her . . . that he stood ready to serve her and that she might pay him later on." These findings show an implied promise to pay a reasonable compensation for the defendant's services. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. *McKenna* v. *Twombly,* 206 Mass. 62. *Butler* v. *Butler,* 225 Mass. 22. *French* v. *Bray,* 263 Mass. 121. *Patron* v. *Quinlan,* 271 Mass. 339.

The final decree ordering the reconveyance was properly conditioned on the receipt by the defendant of the money due him. The original conveyance and the devise in the will were made for the reason that the defendant had been the legal adviser of the plaintiff for two years without receiving compensation, and had competently and for many years served her husband without receiving compensation, and in appreciation of the great help he had been to her husband. The same relationship of trust and confidence reposed which gave rise to the plaintiff's right to a reconveyance makes it inequitable upon the facts

that she should regain the property without paying the defendant the money expended by him upon the property and earned by legal services rendered to the plaintiff. *Hill* v. *Hall,* 191 Mass. 253, 269. *Clark* v. *Story,* 208 Mass. 36, 40. Compare *Little* v. *Phipps,* 208 Mass. 331; *Holian* v. *Holian,* 265 Mass. 563, 566.

The numerous exceptions argued by the plaintiff to the refusal of the trial judge to order a report of the evidence were overruled rightly. Whether the evidence should be reported or not rested in the sound discretion of the trial judge. *Henderson* v. *Foster,* 182 Mass. 447. *Cunningham* v. *Worcester Five Cents Savings Bank,* 223 Mass. 361, 363. *Forino Co. Inc.* v. *Karnheim,* 240 Mass. 574, 580. *Kilkus* v. *Shakman,* 254 Mass. 274. There is nothing in the record to warrant this court in finding that the trial judge was guilty of an abuse of discretion in his refusal to recommit to the special master. *Baush Machine Tool Co.* v. *Hill,* 231 Mass. 30, 41. The supplementary report shows nothing in material contradiction to the special master's report and it includes all the evidence that was ordered to be reported. Slight discrepancies do not require a new report. It is elementary that where the evidence is not reported exceptions to the findings on questions of fact must be overruled, unless self-contradictory or plainly wrong. *Forino Co. Inc.* v. *Karnheim, supra.* *Tripp* v. *National Shawmut Bank,* 263 Mass. 505, 511. *Prudential Trust Co.* v. *McCarter,* 271 Mass. 132, 139. The exceptions relating to the hypothetical question asked an expert concerning the value of the defendant's services must be overruled. We have carefully considered the elaborate brief of the plaintiff dealing with her objections and think they should be overruled. The final decree should be modified so as to include interest, computed and added to the indebtedness found due from the plaintiff to the defendant from January 7, 1927 (the date of the filing of the special master's report) until the entry of the final decree, and as thus modified the several decrees are to be affirmed.

*Ordered accordingly.*