CHEREN v. GELFMAN.
No. 202839.

Circuit Court, Dade County.

January 14, 1958.

Robert Golden, Miami, for plaintiff.

Alfred D. Bieley, Miami, for defendant.

STANLEY MILLEDGE, Circuit Judge.

George Cheren, the executor of Mrs. Rebecca Schlasin's will, challenges the validity of a deed dated January 27, 1957 signed by the decedent purporting to convey her home and its contents to her grandson, the defendant.

Mrs. Schlasin died three days later. Her last will is dated January 8, 1957. It contains no provision for Bernard Gelfman, the grandson, except a $500 bequest—the remainder of her estate was left to her four children and a niece of her deceased husband.

The preceding will, executed December 13, 1954, contains two bequests to Bernard Gelfman of $500 each, provided her husband predeceased her and after bequests prior in dignity have been paid.

The decedent was very fond of the defendant and after executing her last will wished to have a new will leaving her home to her grandson, on condition of his paying some money into the estate. She sent for her lawyer of many years, George Cheren, to come to see her for that purpose. Mrs. Schlasin was ill and feeble. It was difficult for her to move about. There is no reason to believe that she expected to die momentarily and neither did her treating physician. She became upset when Mr. Cheren did not come at once.

Just exactly what she told the defendant is not known, for he declined to testify in his own behalf. From Mrs. Bieley, the wife of the lawyer who drew the deed in question, we learn that Mr. Gelfman came to their home on the evening of January 27, 1957, relating that his grandmother was upset over Mr. Cheren's failure to come to prepare the new will and this made Gelfman upset. Mr. Bieley had known Gelfman but had never previously represented him or Mrs. Schlasin. Mr. Bieley, his wife, and Gelfman, went to Bieley's office and there the questioned deed was prepared.

The idea for a deed rather than a will apparently was Mr. Bieley's. Bieley, his wife and Gelfman then proceeded to the nursing home where Mrs. Schlasin was staying. Mr. Bieley remained outside in the car and Mrs. Bieley and Gelfman entered with the deed. Mrs. Bieley seems to have been in charge of the proceedings there. Just exactly what Mrs. Schlasin was told is not clear but I think that she knew that it had to do with the grandson getting the house but the most probable inference is that Mrs. Schlasin thought that a testamentary rather than an inter vivos transaction was involved. There is evidence that she wished to devise the house to Gelfman—there is no evidence whatever, even from Gelfman, that she had ever expressed an intent to make a present conveyance of it.

It is not contended by Gelfman that his grandmother decided to convey the house, thinking she was dying. On the contrary, she had plans after leaving the home, which she expected to do at once, when she died suddenly three days after executing the deed. Under these circumstances, it was very unreasonable and unnatural for Mrs. Schlasin to divest herself of her home and furnishings, both because she expected to need it and because she might well need the value of the house to keep from being a charge on society if she lived a few more years. The deed did not retain a life estate.

Events following the execution of the deed are significant. Two days later Mr. Cheren came to the nursing home to see Mrs. Schla-

sin, pursuant to her previous request. Gelfman was there and refused to allow Cheren to talk with Mrs. Schlasin privately. Although the talk was about a new will neither Mrs. Schlasin nor Gelfman mentioned the deed. It seems clear that Mrs. Schlasin did not think that she had executed a deed for she said that she wanted to leave the house to Gelfman but felt that he should pay something for it. Cheren could not get her freely to name an amount but when Gelfman mentioned the sum of $4,000 she agreed.

The next day Mrs. Schlasin died. I find that when the deed in question was executed Mrs. Schlasin, although ill and somewhat confused, had enough mental capacity to execute a valid will or deed, provided that the exact nature of the transaction was thoroughly explained and that it was the kind that she had previously determined upon. Mrs. Schlasin did not realize that what she was signing was a present conveyance of her home and furniture, and not the testamentary disposition she had in mind. She had no reason to suspect that Gelfman would present a deed since she had never indicated a desire to make a deed. She had no reason to suspect Gelfman of trickery. Her regard for him and the trust she reposed in him disarmed Mrs. Schlasin. So, if this transaction is viewed from the point of view that the plaintiff had the burden of proving the invalidity of the deed, he has done so.

The case could more simply be disposed of by applying the doctrine of presumed undue influence. There is no question but that Mrs. Schlasin reposed trust and confidence in the defendant. He was active in procuring the drafting and execution of the deed to himself, without consideration other than love and affection. This raises the presumption that the gift was the result of undue influence. The burden is cast on the donee of the gift to overcome the presumption and affirmatively to show that the transaction was fairly, openly and voluntarily entered into with a full understanding of the facts. Rich v. Hallman (Fla.), 143 So. 292; Adams v. Saunders (Fla.), 191 So. 312.

Defendant's proof not only fails to overcome the presumption but affirmatively shows the impropriety of Gelfman's conduct. As already stated, Gelfman failed to take the stand to explain the transaction. The plaintiff announced that he would waive the dead man's statute, if applicable, but still the defendant did not care to testify.

It is not necessary to the decision of this case to point out that the requirement of good faith required that Mrs. Schlasin have the benefit of independent legal advice. Gelfman's conduct in selecting a lawyer to prepare a gift deed is quite to the contrary.

Webster v. Kelly, 274 Mass. 564, 175 N. E. 69, shows how far the courts go in insisting on independent advice in a case of this sort. The grantee of the questioned deed there told his benefactor to go to a judge of a local court to handle the transaction. The grantor was found to have intended to leave the real property to defendant by will. The grantor neither asked nor received any advice from the municipal judge as to the legal effect of the deed.

The court in holding the deed invalid said that it was the defendant's clear duty not only to advise the plaintiff to have independent advice but to see that the advice when given was directed to the significance of her proposed act and that it was made clear to her that the legal effect of the deed was to give the defendant a present vested title to the property conveyed as distinguished from a right or title to come into existence at the time of her death. The defendant "failed in his duty because, knowing that the plaintiff by her will intended to give him only an estate at her death, he did not see to it that she was advised and that she understood her deed would not be revocable at her pleasure but in law was a conveyance of a present estate in fee subject to her life enjoyment."

The facts in the present case are stronger against validity since there is a greater difference between the grantor's intent and the result achieved by deed. Here the testamentary intention was connected with Gelfman's payment of money to the estate and his deed was not subject to a life estate of the grantor as in the Massachusetts case. See also Thompson v. LaLane, 7 Fla. Supp. 181.

It is ordered, adjudged and decreed that the warranty deed dated January 27, 1957, recorded in official records book 43, at page 179, public records of Dade County, from Rebecca Schlasin, a widow, as grantor to Bernard Gelfman, as grantee, conveying the following described land—lot 12, block 11 of Bryan Park, according to the plat thereof recorded in plat book 5 at page 69 of the public records of Dade County, Florida, including the furniture, furnishings and fixtures contained therein, is void and of no effect and the title to said land and personalty is vested as though said deed had never been executed, the said Rebecca Schlasin being the fee simple owner of said land at the time of her death.

The defendant is directed to yield possession of said land and personalty immediately to the plaintiff. Jurisdiction is reserved to determine the use value of the property since the decedent's death, and to enter the appropriate money judgment therefor against the defendant, and to determine the amount of the costs to be taxed against the defendant.